# UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, v. CITIZENS STATE BANK OF LANGDON.

(L.R.A.—, —, 161 N. W. 562.)

**Guardianship — guardian — ward — nature of relation — appointment of guardian — court — oath — bond — duties — enters upon — receives property of ward — trust relation — trust funds — wrongful use of — accounting — failure — insolvent — action to recover funds — person receiving — knowledge of trust.**

1. Where one has been duly appointed by a court of competent jurisdiction as guardian of certain wards, and takes his oath, executes the required bond, enters on the discharge of his duties, and receives as such guardian property, money, or effects of his wards, a trust relation immediately arises between such guardian and wards for the benefit of said wards, and if such guardian squanders such trust funds, and is unable to account for them, and is insolvent, an action will lie by said wards or by any one subrogated to such rights of action, against such guardian or any other person who received any of such trust funds with actual knowledge at the time of so receiving that such funds were held in trust.

**Guardian — surety bond — default — subrogation of surety — funds of ward — squandered by guardian — failure to account — insolvent — surety bond becomes operative — surety responds — shortage paid — subrogated to right of action — against guardian — other persons knowingly receiving such funds.**

2. Where one was duly appointed by a court of competent jurisdiction guardian of certain wards and their estates, and duly qualifies, takes his oath, files the required bond, enters upon the discharge of his duties, receives property, money, or effects of his wards, and thereafter makes default, and squanders such trust funds or uses them in paying his own private debts, and fails to account for such trust funds, and is found by the court when called for an account and an accounting had, to be in default and insolvent, and the conditions of the surety bond become operative and binding upon such surety, and such surety responds to the obligations of its bond and fully discharges its

Note.—Usually sureties on guardians' bonds come within the statute of limitations fixed for bonds generally, but the courts are not in harmony as to when the statute begins to run; the better reasoning and the weight of authority support the rule in the above case that the limitation begins when the guardian's account has been confirmed by the court, and the surety's liability is thus fixed and determined, as will be seen by an examination of the note in 47 L.R.A.(N.S.) 451, on limitation of actions or suits to compel guardian to account, or to recover on his bond, page 460 of such note discussing the question in case of actions or proceedings against sureties.

liability as such surety by payment of the amount for which the guardian so defaulted, to the amount of its obligation required to make good such default, such surety is subrogated to all rights of action which said wards might have against such guardian or against any other person who, with actual knowledge of such trust relations, has received any of such trust funds.

**Action — limitation — guardian — when accrues — surety bond — court — order removing guardian — limitation statute.**

3. The point of time an action accrues against the surety on a guardian bond is when the court upon an accounting had, required of such guardian, thereafter enters its order discharging or removing such guardian. After three years have elapsed from the time of making such order discharging and removing such guardian, the right of action against sureties on such bond is barred by the statute of limitation, and not otherwise.

**Statute of limitation — against guardian — accounting — court — order discharging — bond — surety on.**

4. The time when a ward may bring an action against his guardian is any time within three years after an accounting in court of such guardian has been had, and an order made by such court discharging or removing such guardian, and the same rule applies to the time when an action may be maintained against the surety on a guardian bond and when a surety may maintain action on his own behalf against other persons to recover back the estate.

Opinion filed January 30, 1917.

Appeal from a judgment of the District Court of Cavalier County, *Cooley, J.*

Judgment for plaintiff. Defendant appeals.

Affirmed.

*Geo. M. Price,* for appellant.

"Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, actual or constructive, is their essential element." 39 Cyc. 27, 169, 379, 525, 528; German American Seminary v. Kiefer, 43 Mich. 105, 4 N. W. 636; Comp. Laws 1913, § 6294.

The burden was on plaintiff to show the condition of Poppe's account as guardian for the children, and to show that the disbursements were wrongful. Gray v. Farmers' Exch. Bank, 105 Cal. 60, 38 Pac. 519.

In an action to subject a trust fund to the payment of services rendered, it is necessary to allege not only the existence of a trust, but that some amount remains due for such services. Leyda v. Reavis, 77 Neb. 695, 110 N. W. 642.

"To charge a stranger to the trust as trustee by reason of participating in the misapplication of the fund, it is necessary to show that such person was aware of the character of the fund, and that the purpose to which it was applied was not a proper one for its use." Perry, Trusts, § 815.

Restoration must be made before such action will lie. Fifth Nat. Bank v. Hyde Park, 101 Ill. 595, 40 Am. Rep. 221.

The law will not charge the officers of a bank with knowledge that a depositor is committing a fraud, nor impose upon them the duty of inquiry, simply because he is drawing upon a trust fund checks payable to himself, or is transferring funds from a trust account to a private account. Goodwin v. American Nat. Bank, 48 Conn. 551.

The burden is upon the plaintiff not only to show that at the time the bank received the fund it was a trust fund, but that the bank knew it was a breach of the trust when Poppe paid it to the bank. Smith v. Des Moines Nat. Bank, 101 Iowa, 620, 78 N. W. 238; Gate City Bldg. & L. Asso. v. National Bank, 126 Mo. 82, 27 L.R.A. 406, 28 S. W. 633; Van Hoose v. Bush, 54 Ala. 353; Sutherland v. Brush, 11 Am. Dec. 387, note.

"It is only in cases of actual fraud that the running of the statute is postponed until the fraud is discovered; in cases of constructive fraud the statute runs from the time of the fraudulent act complained of." 25 Cyc. 1184, 1189, 1221.

In constructive or implied trusts, except where the trust is imposed on the ground of fraud which is not immediately discovered, or there has been a fraudulent concealment of the cause of action, the statute begins to run in favor of the party chargeable as trustee from the time when the wrong is done. 25 Cyc. 1158; McDowell v. Goldsmith, 6 Md. 319, 61 Am. Dec. 305; Jewell v. Jewell, 139 Mich. 578, 102 N. W. 1059; Stillwater & St. P. R. Co. v. Stillwater, 66 Minn. 176, 68 N. W. 836; Merton v. O'Brien, 117 Wis. 437, 94 N. W. 340; Buttles v. DeBaum, 116 Wis. 323, 93 N. W. 5; Nougues v. Newlands, 118 Cal. 102, 50 Pac. 386; Broder v. Conklin, 121 Cal. 282, 53 Pac. 702; Saum v. Coffelt, 79 Va. 510; Cooper v. Cooper, 61 Miss. 676; Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328.

It is held in like cases that the statute begins to run against the minors notwithstanding their infancy; because of the fact that during the period of minority they were represented by the guardian, who had the au-

thority to sue.    Perry, Trusts, § 815, and cases cited; Coleman v. Walker, 3 Met. (Ky.) 65, 77 Am. Dec. 163; Worthy v. Johnson, 10 Ga. 358, 54 Am. Dec. 393; Moore v. Armstrong, 36 Am. Dec. 68, note; Smilie v. Biffle, 2 Pa. St. 52, 44 Am. Dec. 157; Shelby v. Shelby, Cooke, 179, 5 Am. Dec. 686; Pom. Eq. Jur. § 1048.

"While many of the rights of a surety depend upon payment to him, he possesses many before payment, and such rights have their inception as soon as he executes the instrument."    32 Cyc. 244, 511, 512, 522, 577, 639; McConnell v. Scott, 15 Ohio, 401, 45 Am. Dec. 583; Howell v. Cobb, 2 Coldw. 104, 88 Am. Dec. 591; Ramsay v. Gervais, 2 Bay, 145, 1 Am. Dec. 635; Pride v. Boyce, Rice, Eq. 275, 33 Am. Dec. 78; Dobie v. Fidelity & C. Co. 95 Wis. 540, 60 Am. St. Rep. 135, 70 N. W. 482; Bishop v. Day, 13 Vt. 81, 37 Am. Dec. 482; Nelson v. Webster, 72 Neb. 332, 68 L.R.A. 513, 117 Am. St. Rep. 799, 100 N. W. 411.

Whenever a joint cause of action exists, and the statute is a bar to any of the plaintiffs, it is a bar as to all.    Comp. Laws 1913, § 5767; Powell v. Koehler, 52 Ohio St. 103, 26 L.R.A. 480, 49 Am. St. Rep. 712, 39 N. E. 195; Cameron v. Hicks, 141 N. C. 21, 7 L.R.A.(N.S.) 408, 53 S. E. 728.

The right of subrogation is one of equity merely, and due diligence must be exercised and shown in ascertaining it.    Laches in taking advantage of the right will forfeit it.    37 Cyc. 371, 387; Ocobock v. Baker, 52 Neb. 447, 66 Am. St. Rep. 519, 72 N. W. 583; Gring's Appeal, 89 Pa. 336; Sheldon, Subrogation, 110, 111; Ft. Dodge Bldg. & L. Asso. v. Scott, 86 Iowa, 431, 53 N. W. 284.

*Scott Rex* and *McIntyre & Burlness,* for respondent.

The bank in cashing the checks with knowledge that they were drawn on a trust fund, and that the funds were being diverted to wrong purposes and uses, became a joint tort feasor with the maker in the conversion of the funds.    Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435; Northern Trust Co. v. First Nat. Bank, 25 N. D. 79, 140 N. W. 705.

Where a guardian has misappropriated the funds of his ward, and, upon being called to account by a court of competent jurisdiction, is found short and is discharged by the order of the court duly entered, the surety on his bond is subrogated to the rights of the ward, and may maintain an action to recover if brought within the proper time.    North-

ern Trust Co. v. First Nat. Bank, 25 N. D. 74, 140 N. W. 705; Empire State Surety Co. v. Nelson, 141 App. Div. 850, 126 N. Y. Supp. 453; United States Fidelity & G. Co. v. Adoue, 104 Tex. 379, 37 L.R.A. (N.S.) 409, 137 S. W. 648, 138 S. W. 383, Ann. Cas. 1914B, 667; Boone County Bank v. Byrum, 68 Ark. 71, 56 S. W. 532; National Surety Co. v. State Sav. Bank, 14 L.R.A.(N.S.) 155, 84 C. C. A. 187, 156 Fed. 21, 13 Ann. Cas. 421.

Defendant aided and acted in the wrongful use of these trust funds by accepting same in payment of the guardian's private and personal debts; knowing the funds to be trust funds, it took an active part in their conversion. Field v. Schieffelin, 7 Johns. Ch. 150, 11 Am. Dec. 441.

It is elementary that the statute of limitations does not begin to run until a cause of action has accrued and come into existence in favor of a party who at the moment has a legal right to sue upon it. Re Hanlin, 133 Wis. 140, 17 L.R.A.(N.S.) 1189, 126 Am. St. Rep. 938, 113 N. W. 411; Gronna v. Goldammer, 26 N. D. 122, 143 N. W. 394, Ann. Cas. 1916A, 165; Brewer v. Perryman, — Okla. —, 159 Pac. 501.

GRACE, J. This case is appealed from a judgment of the district court of Cavalier county, in favor of the plaintiff and against the defendant.

The complaint in the case is in effect as follows: That the plaintiff is a foreign corporation, licensed to do business in the state of North Dakota, and its business is that of furnishing surety bonds; that defendant is a banking corporation engaged in business at Langdon, North Dakota.

That F. W. Poppe was appointed guardian of Charles E. Hommel, Izatta M. Hommel, Lee Roy Hommel, and Albert E. Hommel, minors, on January 26th, 1904, and of their estates, and on April 9th, 1914, duly qualified as such guardian and gave a bond in the sum of $6,500, executed by the plaintiff as surety, which bond was approved by the county court, and at all times mentioned was in full force and effect.

Charles E. Hommel was born March 21st, 1884; Izatta M. Hommel was born February 17th, 1891, Lee Roy Hommel was born November 29th, 1883, Albert Hommel was born February 6th, 1897. Charles E. Hommel died at Langdon, North Dakota, October 3rd, 1907, unmarried and intestate, and his sole heirs were Grace Mellen, formerly Grace Hommel, Izatta Foote, formerly Izatta Hommel, Lee Roy Hommel, and

Albert H. Hommel. That certain assets of the estates of said minors came to the hands of Poppe as guardian; to wit, money in the sum of two thousand five hundred dollars ($2,500) and upwards; a portion of such, to wit, $1,220, was invested by him on May 21st, 1904, in a certain note and mortgage then purchased by him from the defendant for purpose of investment, and which was then assigned to him as such guardian by defendant. That thereafter, on November 14th, 1904, said Poppe resold said mortgage to defendant, and the defendant wrongfully retained, took, and applied one thousand sixty-one and 05/100 dollars ($1,061.05) of the purchase price of such mortgage, well knowing that same was then and there a part of such trust funds in the hands of Poppe, in payment of certain debts due and owing from said Poppe individually to the defendant. That the defendant then and there well knew that the said funds were trust funds. That Poppe had no right or authority to permit defendant to retain and appropriate same to the payment of Poppe's individual debts. That the defendant then and there became indebted to the said minors, their legal representatives and assigns, and liable to repay and pay over the sum to them, together with interest thereon, from the time defendant so wrongfully retained, took, and applied the same.

That such proceedings were had on November 12th, 1912, in the guardianship matters of said Poppe as guardian aforesaid; that it was adjudicated in said county court that said Poppe was indebted as such guardian to the estate of said Lee Roy Hommel in the sum of one thousand twenty-one and 10/100 dollars ($1,021.10); to the estate of Albert Hommel in the sum of five hundred thirty-seven and 22/100 dollars ($537.22); indebted to Izatta Hommel, now Foote, in the sum of one thousand two hundred forty-six and 28/100 dollars ($1,246.28); to the estate of Charles E. Hommel in the sum of eight hundred seventy-four and 88/100 dollars ($874.88).

That said Poppe was removed as such guardian. That said Poppe is now, and for a long time has been, insolvent. That he wholly neglected and failed to pay the sum due to said minors, and that by virtue of its liability so to do under the bonds executed by it, plaintiff paid to the several persons entitled thereto the sums adjudged to be due from said Poppe to Lee Roy Hommel, Albert Hommel, Izatta Hommel, now Foote, and the estate of Charles E. Hommel.

That by reason of the premises and assignments, duly executed to it by said persons, plaintiff has become and is subrogated to all the rights of said wards, to have and recover of and from the defendant the moneys mentioned as wrongfully taken and appropriated by defendant to his own use.

That plaintiff has demanded payment and an accounting from defendant of the aforesaid moneys; and that defendant has neglected to pay over or account to the plaintiff for same.

Plaintiff demands an accounting against defendant and judgment for one thousand sixty-one and 05/100 dollars ($1,061.05) and interest from November 14th, 1904, and the costs, to which complaint the defendant answered, first interposing a general denial, and further answering the complaint, admits that on May 21st, 1904, the said Poppe purchased a certain note and mortgage from defendant of the value and for the agreed purchase price of $1,220, and further admits that on November 14th, 1904, this defendant repurchased aforesaid mortgage from said Poppe, and alleges the fact to be that the repurchase of said mortgage by this defendant was in good faith for a valuable consideration before maturity thereof, and without knowledge and notice of the rights or equities, if any, of the Hommel minors therein or thereof, or of the plaintiff herein.

Defendant further alleges that the plaintiff's cause of action did not accrue within six years prior to the commencement of this action.

### Statement of Facts.

In April, 1904, the plaintiff executed the bond in the sum of $6,-500 of one F. W. Poppe as guardian of Charles, Izatta, Lee Roy, and Albert Hommel, minors, Poppe having been appointed by the county court of Cavalier county as guardian for such minors. Poppe deposited $2,500 of these guardianship funds in the defendant bank May 10th, 1904. The account was opened as "F. W. Poppe, Guardian for Hommel Minors." May 21st, 1904, Poppe purchased a note from defendant for $1,220, secured by real estate, which note and mortgage were purchased by said Poppe as such guardian as an investment for part of the funds of the Poppe wards. November 14th, 1904, said Poppe resold this mortgage to the defendant bank for $1,268, being the face of the mortgage and accrued interest. Defendant, during the same day said

note and mortgage were resold to it by Poppe, received from Poppe the sum of $1,061.05 in payment of a private debt which Poppe owed the bank.

The court before whom this case was tried, being the Hon. Chas. M. Cooley, judge of the first judicial district, made certain findings of fact, numbered from 1 to 15, both inclusive, covering and including all the issues of fact in this case, and which are too lengthy to be set out in this opinion.

The defendant made due exception to all such findings of fact made by said court, and in turn proposed certain findings of fact on behalf of the defendant, all of which were denied by the court, and which were numbered from 4 to 31, inclusive.

We have carefully read and studied each and all of the proposed findings of fact submitted by the defendant, and have concluded that the trial court was not in error in denying such and all of defendant's proposed findings of fact, for the reason that the substance of them, where material and proper, was included in the findings of fact made by the court, and where the substance of any of defendant's proposed findings of fact was not included in the court's findings of fact, such part was by the court properly excluded and denied. We have examined with much care the findings of fact of the court, and they coincide with what we believe should be the true findings of fact in this case. We have examined the record in this case; we have examined the transcript of the testimony, and have studied the briefs of the attorneys, and from such examination of the record we have come to the conclusion and found the facts to be as stated by the trial court, and therefore adopt the findings of the trial court as our findings of fact in this case. This case is one in particular where the findings of the trial court should receive serious consideration for the reason that it is one which requires weighing of testimony of different witnesses for the purpose of determining their credibility. One of the witnesses, it is conceded, has squandered the trust funds of his wards; another of the witnesses in two different actions concerning this matter has given testimony in such cases that diametrically conflicted, and there was other testimony in the case coming from witnesses that required to be weighed with great care. And the court in this case, having had an opportunity to see these witnesses, hear them testify, see their demeanor on the stand and their actions, and

the willingness or unwillingness with which they testified, was in a superior position to determine the credibility of all witnesses in this particular case and the weight to be accorded to their testimony than we. Having come to this conclusion, we agree with the trial court in its findings of fact and adopt them as our findings of fact in this case. See Christianson v. Farmers' Warehouse Asso. 5 N. D. page 438, 32 L.R.A. 730, 67 N. W. 300.

Having thus adopted the trial court's findings of fact, we proceed to analyze this case and these facts and determine the principles of law which we believe should govern in this class of case. The three main questions of law to be applied relate to subrogation, trust relation, and the statute of limitation. Before proceeding to discuss these three main questions or propositions, we may refer to the matter of plaintiff's demand before the bringing of this suit, and we think that if the demand was at all necessary, the letter—"exhibit E"—received by the defendant from Scott Rex, then attorney for the plaintiff, was quite sufficient, and it is held from all the testimony relating to the making of a demand that such demand was made.

Proceeding now to the discussion of the question of subrogation of the plaintiff to the rights of the *cestuis que trusts* and to their powers, privileges, and rights of action against Poppe, the guardian, for any property, money, or effects, spent and unaccounted for by him from their estate, we say that the plaintiff in this action is entitled to be wholly and entirely subrogated thereto. The plaintiff was surety upon the bond of Poppe in the sum of $6,500, wherein said Poppe was guardian for said minors and their estates. That the estates of said minors collectively amounted to several thousand dollars. That said bond was duly given in order to insure the full performance of all the duties which said Poppe, as such guardian, owed to his wards, including full accounting to them of all property, moneys, and effects which might come into his possession during the time he was acting as guardian. The testimony shows that Poppe, as such guardian, squandered a great deal, in fact nearly all, of such trust property as came into his hands, and that, at a full accounting had in the county court upon a petition of some of the wards, it was shown that he was greatly indebted to his different wards and that he was unable to pay such indebtedness, and that he was insolvent and financially irresponsible and bankrupt. That the plaintiff

herein was notified of the default and delinquency of the said Poppe to account for the funds of the estates of the wards and of his inability to do so, and that the conditions of its obligations as surety for said Poppe had become binding and operative upon it. The plaintiff as such surety, promptly and fully, under and by virtue of its obligations as such surety, did wholly and entirely pay all the amounts found by the county court after such full accounting, to be due and owing from Poppe as such guardian to each and all of his said wards, and immediately thereby, by reason of the plaintiff's full performance of its obligations as such surety, became subrogated to all the rights of action or right of accounting, or rights of property, money, or effects, which might have been claimed by the said wards against the said Poppe as such guardian and holder of such trust funds, and against anyone else to whom Poppe as such guardian had permitted such trust property and money to pass or become acquired by in prejudice to the rights of said minors, who had knowledge of the trust relations existing between Poppe and his said wards at the time any such parties acquired any such interest in said trust funds. For authority on this subject see State ex rel. Miller v. Buttzville State Bank, 26 N. D. page 196, 144 N. W. 105; Gronna v. Goldammer, 26 N. D. page 122, 143 N. W. 394, Ann. Cas. 1916A, 165.

We will now consider the second important question, to wit, trust relations. It must be considered as true that where one is appointed as guardian for the person and estates of minors by order of a competent court, and after such appointment duly qualifies, takes his oath of office, furnishes bond, enters upon the discharge of his duties, a trust relation immediately arises between such guardian and his wards, and that he becomes responsible and accountable to them for all of the property, moneys, or effects, or things of value that may belong to said wards and which come into the possession and under the control of said guardian for them. And that said wards can also as a general rule hold all other persons responsible who, having knowledge of the trust relations existing between such guardian and wards, secure to themselves any of such property against the interest of said wards.

We will now mention the testimony in this case to determine whether or not defendant herein had actual knowledge of the trust relations which existed at all times mentioned in this case. It is established conclusively by the testimony that during the month of May, 1904, Poppe, as

such guardian, received the sum of $2,500 of his wards' money, which he deposited in the defendant bank under a deposit account known and designated as "F. W. Poppe, Guardian," and that another deposit was made by Poppe as such guardian to said account in April, 1905, for the sum of about $1,600. Poppe, the guardian, testified in a deposition in a former action regarding these trust funds, in answer to questions propounded to him, that he received certain funds of said wards soon after he qualified as such guardian that were deposited in the Citizens State Bank of Langdon, the defendant in this case that said account was carried in said bank as guardian for Hommel minors under the name of "F. W. Poppe, Guardian for Hommel Minors." That he drew checks on said account from time to time. The testimony of Milne in this regard, in answer to direct questions of counsel for plaintiff, is in substance as follows: Milne, cashier of the defendant bank, admits in his testimony, shown on page 44 of the transcript, that Poppe had made statements to Milne, and gave Milne to understand, that he was guardian for the Hommel children.

On page 45 of the transcript, Milne testifies as follows:—

Q. You knew he had just been recently appointed as guardian for those children; that is, you knew he had just been appointed that Spring?

A. Oh no, he had been guardian a year or two years then.

Q. He told you that, did he?

A. Yes, sir.

Q. At that time, November 14th, 1904?

A. Yes.

Q. That he had been guardian for them for two years?

A. About two years he thought.

Q. They were all out there at that time?

A. Yes.

The ledger account of F. W. Poppe, guardian, which is introduced in evidence as a true copy taken from defendant's ledger used in its bank, shows for itself that $2,500.58, $1,699, and other deposits were deposited with defendant bank under the title of "F. W. Poppe, Guardian." It also shows the checking out of these deposits at various times by F. W. Poppe, Guardian. Among the checks drawn out was

one for $1,220, payable to the defendant, dated May 21st, 1904, payable to J. D. Milne, Cashier, signed, Fred W. Poppe, guardian for Hommel Minors, marked "exhibit K." At the time this check was issued, Poppe had been guardian of the children since April, 1904. It is conceded by the testimony, said check was given for the purchase of a certain note and mortgage as an investment for some of the funds of the Hommel minors, for whom Poppe was guardian, and that said mortgage was assigned by the defendant to F. W. Poppe, as such guardian; that F. W. Poppe resold said mortgage, as such guardian, to defendant bank in the month of November, 1904.

It is not necessary to proceed further with the discussion of the analysis of this testimony. The record is complete and abundantly shows that the defendant bank knew at the time of the depositing the $2,500 that such $2,500 was a trust fund; it so showed on the defendant's books, and defendant had complete and actual knowledge of the trust relations existing between Poppe, as such guardian, and his minor wards, also at the time it received their deposits into its bank, and at the time it sold Poppe, as guardian, the note and mortgage for $1,220, and received his check as such guardian of such minors therefor, and at the time when it repurchased said note and mortgage in November, 1904. It is also shown that defendant, on or about November 21st, 1904, when it purchased said note and mortgage for $1,268, claimed to have paid the defendant on said day the full amount of the note and mortgage in cash, and, in addition thereto, claimed to have paid him the amount of a certain certificate of deposit for the sum of $625 deposited with defendant bank by F. W. Poppe, as administrator of the estate of Charles Hommel, deceased, in all, between $1,800 or $1,900, all of which were trust funds. It is also shown that on the same day Poppe paid the defendant bank $1,061.05 of Poppe's own private debts.

In exhibit A, Poppe's deposition taken in a former case and introduced as evidence in this case, questions were asked Poppe as follows:

Q. Were you indebted individually to the defendant bank at the time they purchased this mortgage from you?

A. I was indebted; I do not remember just what time that was.

Q. In 1904, can you state what became of the purchase price which the bank paid or agreed to pay you on the repurchase of this mortgage from you?

A. I think it squared up some old debts that I owed the bank and other parties that the bank had taken the paper.

Q. Milne testified on the trial of the case, to which I have heretofore referred, that the amount of your individual indebtedness which was taken up and paid out of the proceeds of this check, was the sum of $1,061.05. Is that substantially in accordance with your recollections?

A. Yes, I think I owed them somewhere along there.

Milne in his testimony in the former case testified as follows:

Q. Was there a written assignment of this mortgage executed to Mr. Poppe?

A. Yes, as guardian.

Q. How was that repurchase price of $1,268.80 paid?

A. I do not remember how it was all paid.

Q. Your books will show?

A. No.

Q. Well, how was part paid, do you remember?

A. Part of it was redeposited and part was paid in cash and a portion of it went to the bank.

Q. What part of the proceeds went to the bank, how much?

A. $1,061.05.

Q. Did that sum $1,061.05 go in liquidation, was it applied in liquidation, of debts that Mr. Poppe owed the bank individually?

A. Yes.

Q. And that was on November 14th, 1904, was it?

A. Yes.

Q. At the time this mortgage was repurchased by the bank from Mr. Poppe on November 14th, 1904, was a reassignment executed by Mr. Poppe to the bank?

A. There was.

Q. I will ask you whether your bank, directly or indirectly, in any manner, way, shape, or form, had benefit of any of the proceeds of the repurchase of that mortgage except or in addition to the sum of $1,061.05?

A. They did not.

Q. Did you act for the bank in the matter of the repurchase of this mortgage?

A. Yes, sir.

Q. And of application of its proceeds?

A. Yes, sir.

Milne, the cashier of the bank, testified that Poppe, at the time he resold said mortgage to the bank, claimed to have coming from the minor wards $1,200 or more.   At this time Poppe had only been guardian a little more than six months, and in his deposition testified as follows:

Q. Were the children for whom you were guardian, at that time owing you any money?

A. Not to any amount I do not think.

This was at the time the mortgage was repurchased at the defendant bank.   The defendant in this case does not deny receiving the $1,061.06 from Poppe, which was applied to Poppe's own individual debts upon the same day the bank repurchased the mortgage, but the defendant claimed it paid Poppe all these trusts funds in cash, and that he went out for several hours and then returned and paid the $1,061.05 in cash on his individual debts, and defendant takes the position that it had no knowledge of whether the $1,061.05 paid them was part of the trust fund which it paid Poppe on the same day, or whether it was other money than the money it had paid him.   It having been conclusively shown by all the testimony in the case that the defendant bank had actual knowledge at all times of the trust fund in question, the burden of proof is on it to show that the $1,061.05 received by it within a few hours after it claimed to have paid all such trust funds to Poppe was not part of the trust fund.   We have discussed the testimony quite lengthily.   The correct rule in equity is, wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing or carrying into effect the terms of an express trust, or that which devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, such heir or devisee, successor or other voluntary transferee or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary.   It is not necessary that such transferee should be guilty of positive fraud, or should actually

intend a violation of the trust obligation; it is sufficient that he acquired property upon which a trust is in fact impressed and that he is not a bona fide purchaser for a valuable consideration and without notice. This universal rule forms the protection and safeguard of the rights of beneficiaries in all kinds of trust; it enables them to follow trust property as long as it can be identified into the hands of all subsequent holders as long as they had positive knowledge. See Pom. Eq. Jur. § 1048; Cavin v. Gleason, 105 N. Y. 262, 11 N. E. 504; Holmes v. Gilman, 138 N. Y. 369, 20 L.R.A. 566, 34 N. E. 205, and Northern Trust Co. v. First Nat. Bank, 33 N. D. page 1, 156 N. W. 212. In the case at bar, the defendant had actual knowledge of the trust relations at all times mentioned in this case, and was not a bona fide purchaser for value without notice; but at all times mentioned in this case had actual and positive knowledge of the trust relations existing between Poppe, as guardian, and the wards. So far as the matter of trust relations goes, the wards could have recovered against Poppe, the guardian, or the defendant herein, under all circumstances mentioned herein, and if they could have recovered, it follows that the surety, the plaintiff herein, can recover, for in this case it has assignments of all of their claims and interest, and is subrogated to all their rights, and is armed with an order of the county court permitting it to bring the action.

We cannot discuss all the authority cited, and we realize that some of the authorities cited by appellant such as the Fifth Nat. Bank v. Hyde Park, 101 Ill. 595, 40 Am. Rep. 219, tend to bear out the contentions of appellant, yet, as must be conceded, trust relations are of infinite form and variety, and each case must thoroughly first be considered upon its own merits. We prefer to follow the more liberal rule which is set forth to some extent in the decisions we have cited.

There still remains the question raised by the defendant of the statute of limitations. The defendant claims that the time when the statute of limitation began to run was some time in 1904. We cannot agree with this conclusion, and hold that the appointed time when the statute of limitation was set in motion, or commenced to run, was the time when the adjudication of Poppe's guardian's accounts was had in the county court of Cavalier county, which was on November 12th, 1912, as shown by exhibit B. That being the case, the plaintiff was not guilty of laches in the commencement of this action. In the case of Gronna v.

Goldammer, 26 N. D. page 122, 143 N. W. 394, Ann. Cas. 1916A, 165, it was thoroughly settled as to the time when the right of action accrued in a case such as the one at bar. The opinion in that case was written by present Chief Justice Bruce, and is a correct and most able exposition of the law upon a question similar to the one involved in this case, and the writer of this opinion follows the opinion in that case and takes it as a true standard and test as to the proper time when the right of action accrues in a case such as the one at bar, and it is unnecessary therefore to continue the discussion as to this point, and we simply hold that the right of action did not accrue to the plaintiff in this action until November 12th, 1912, and this action having been brought within seasonable time from that date, and before the statute of limitation had run, the plaintiff is properly in court and is not guilty of laches.

The appellant in this case in its answer sets forth the time of the birth of the different wards for the purpose of showing that they arrived at legal age, or attained their majority, at a certain time, and that, as to some of such wards, more than six years have elapsed since they attained their majority, and more than six years having elapsed since some of such wards have attained their majority and before the commencement of this action,—that for this reason the statute of limitation has run. Such reason does not apply to this case for the reason that after the ward has arrived at his majority, no right of action accrues to him against his guardian, or the surety on the guardian bond, until an accounting has been had in the county court and an order is made discharging or removing such guardian; and an action can then be only maintained against the guardian or his sureties if commenced within three (3) years after the time of the removal or the discharge of such guardian.

There are other minor matters in this case that might be discussed, but we do not believe it is necessary. We have considered all the matter in this case and have read carefully the brief of each attorney, and we are fully satisfied after a thorough consideration of all the testimony and propositions of law that the plaintiff must prevail in this case, and that the judgment of the District Court in all things should be affirmed. The judgment of the District Court is affirmed, with costs.