## ANACOSTIA BANK v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 7632.

United States Court of Appeals for the District of Columbia.

Argued Feb. 20, 1941.

Decided April 7, 1941.

George C. Gertman, of Washington, D. C. (John H. Burnett, of Washington, D. C., on the brief), for appellant.

Louis M. Denit, of Washington, D. C. (Thomas S. Jackson, of Washington, D. C., on the brief), for appellee.

Before GRONER, Chief Justice and VINSON and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

A child's mother was appointed its guardian, and deposited guardianship funds in appellant bank. The bank gave her, as guardian, a deposit receipt which bore four per cent interest. She afterwards borrowed money from the bank, at six per cent, for her personal use, on a note which she signed personally and not as guardian. As security for this personal note, and certain additions and renewals, the bank took from her the deposit receipt, and successive receipts, which purported to belong and did belong to her as guardian. She did not pay her personal note at maturity. The bank demanded payment. She then surrendered to the bank the deposit receipt, which she had endorsed as guardian, and took from the bank a cashier's check to her order as guardian, which she immediately endorsed as guardian and handed back to the bank in payment of her personal note.

The Probate Court removed the guardian. Her surety, the present appellee, made good, to her successor, the loss caused by her default. The successor guardian then assigned to the surety the guardianship claim against the bank arising out of the bank's part in the default. This suit is brought by the surety (appellee) against the bank (appellant). The surety claims both by way of subrogation and as assignee.

A bank officer testified that, on some unspecified occasions when the defaulting guardian borrowed money, she said that she was borrowing it for the "benefit" of the ward. She contradicted this testimony. The officer testified, without contradiction, that she never said she was getting the money "for her own personal use." At the trial, she made it clear that the speculation for which she borrowed the money was her personal speculation, and that she expected it to benefit her child only indirectly, as a parent's gains normally benefit his minor children. There was no testimony that she did not make this equally clear when, and if, she spoke to the bank officer of a "benefit" to the child. There was no testimony that any officer or agent of the bank ever believed that she was borrowing for guardianship purposes, or doubted that she proposed to treat the borrowed money as her own.

The District Court thought it clear that when the bank accepted the deposit certificate as security for a personal loan, and also when it accepted the check, payable to and endorsed by the guardian, in payment of the personal loan, it knew that the loan was personal. We agree. Not only were the notes in personal form, but they bore interest fifty per cent higher than the guardianship's certificate of deposit. If the guardian had wanted money as guardian, she had only to draw on the certificate of deposit. Money so obtained would have cost only four per cent. To reject that course and borrow at six per cent was a plain announcement that she was not at liberty to draw on the certificate of deposit; in other words, that she was not obtaining funds for guardianship purposes. The bank cannot have believed that she was so determined to enrich the bank and impoverish the ward that she continued to lend fiduciary funds to the bank at four per cent in order to borrow them back for fiduciary purposes at six per cent. We need not decide whether, if the bank had believed that the guardian's breach of trust was of that sort, its position here would have been strengthened.

It follows that the court was right in directing a verdict against the bank. As the bank knew the facts, it was liable for the breach of trust which it helped the guardian to commit.[1] A third person who knowingly participates in the breach of a fiduciary's obligation can be required to make good the resulting loss.[2] Normally the fiduciary's surety, on reimbursing the fiduciary estate, is subrogated to its claim.[3] Cases disallowing subrogation when "equities are equal"[4] are not in point. While appellee has acted properly, appellant, for its own profit, has knowingly participated in a breach of trust.

Affirmed.

---

[1] D.C.Code, Tit. 11, Sec. 34 (Uniform Fiduciary Act, Sec. 4).

[2] Colby v. Riggs Nat. Bank, 67 App.D.C. 259, 92 F.2d 183, 114 A.L.R. 1065.

[3] Bank of Giles County v. Fidelity & Deposit Co. of Maryland, 4 Cir., 84 F.2d 321; American Bonding Co. of Baltimore v. National Mechanics' Bank of Baltimore, 97 Md. 598, 55 A. 395, 99 Am. St.Rep. 466; United States Fidelity & Guaranty Co. v. Citizens' State Bank of Langdon, 36 N.D. 16, 161 N.W. 562, L. R.A.1918E, 326; Jones v. United States Fidelity & Guaranty Co., 165 Va. 349, 182 S.E. 560; Hall v. Windsor Sav. Bank, 97 Vt. 125, 121 A. 582, 124 A. 593; United States Fidelity & Guaranty Co. v. Adoue & Lobit, 104 Tex. 379, 137 S.W. 648, 138 S.W. 383, 37 L.R.A.,N.S., 409, Ann.Cas.1914B, 667; Fidelity & Deposit Co. of Maryland v. Farmers' Bank, 8 Cir., 44 F.2d 11, certiorari denied 282 U.S. 901, 51 S.Ct. 213, 75 L.Ed. 793.

[4] Washington Mechanics' Sav. Bank v. District Title Ins. Co., 62 App.D.C. 194, 65 F.2d 827, 830.