**EVANS v. PRENTICE et al.**

No. 1008.

Municipal Court of Appeals
District of Columbia.

Argued Feb. 5, 1951.

Decided March 16, 1951.

Mark C. Bowsher, Washington, D. C., Milton M. Burke, Washington, D. C., on the brief, for appellant.

Clarence G. Pechacek, Washington, D. C., for appellees Prentice and Chalmers Co., Inc.

Henry S. Goodman, Washington, D. C., Charles W. Proctor, Washington, D. C., on the brief, for appellee Security Savings and Commercial Bank.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This litigation arises out of a contract under which Chalmers Co., Inc. agreed to build a house for Effie F. Evans for $15,-950. On July 29, 1948, by check made payable to that company, Mrs. Evans made her initial payment of $2500 under the contract but no work was ever started on the house, and in January 1949 she filed suit to recover that sum. She named as defendants Chalmers Co., Inc. and its president, James H. Prentice, charging in her complaint not only breach of contract but also that the contract had been obained by the false and fraudulent representations of Prentice; and she also charged that Prentice had misappropriated the $2500 to his own use. She also named as defendant Security Savings and Commercial Bank, which she charged had wrongfully and negligently paid the proceeds of her $2500 check to Mr. Prentice.

The trial judge directed a verdict in favor of defendant bank on the opening statements of counsel. The case proceeded to trial against Chalmers Co., Inc. and against Prentice personally. At the close of all the evidence the judge directed a verdict in favor of Prentice and submitted the case to the jury to determine the liability of the corporation. The result was a verdict for plaintiff for $2500 against that defendant. This appeal by plaintiff challenges the cor-rectness of the two directed verdicts and also raises certain other contentions.

*It was proper to direct a verdict in favor of the bank.*

As we have previously said, directing a verdict on an opening statement is "an extreme measure and trial judges should invoke it most cautiously, for the opening statement is to be construed liberally and favorably to plaintiff's case." [1] But where it is clear from plaintiff's opening statement that there can be no recovery, a directed verdict is proper. [2] We think such action was justified in this case. The trial judge was careful to elicit from plaintiff's counsel a full explanation of his position and a clarification of what he expected to be able to prove against the bank. In essence it was this: That plaintiff's check for $2500 drawn on the City Bank and made payable to Chalmers Co., Inc. was presented at the Security Savings and Commercial Bank by Mr. Prentice personally, who had indorsed on the back of it, "Chalmers Co. Inc. James H. Prentice Pres." and under that indorsement signed his own name, James H. Prentice, as an individual; that the bank credited the amount of the check to the personal account of Mr. Prentice and that he "used it for purposes other than for which it was intended." Plaintiff based her claim of liability largely on Code 1940, § 28–2304, which provides in part that if an instrument is transferred by a fiduciary in payment of a personal debt of his own to the actual knowledge of the creditor, or is transferred in a transaction known by the transferee to be for the personal benefit of the fiduciary, the transferee becomes liable to the principal if the fiduciary in fact commits a breach of his obligation in making the transfer. But even if we could assume (which we think we cannot) that the bank was a "fiduciary," we note that the same section provides that "the indorsee is not

1. Custer v. Atlantic & Pacific Tea Co., D.C.Mun.App., 43 A.2d 716, 717.

2. Oscanyon v. Winchester Repeating Arms Company, 103 U.S. 261, 26 L.Ed. 539; Brown v. District of Columbia, 29 App. D.C. 273, 25 L.R.A.,N.S., 98; Hornblower v. George Washington University, 31 App.D.C. 64; Smith v. O'Brien, 66 App.D.C. 387, 88 F.2d 769; Niosi v. Aiello, D.C.Mun.App., 69 A.2d 57.

bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in indorsing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith."

Here there was no suggestion of bad faith on the part of the bank and no offer to prove any facts which should have put it on notice that Prentice was guilty of a breach of faith in negotiating the check and depositing the proceeds to his own credit.[3] This situation is entirely different from those in which a bank pays trust funds to itself or sets them off for its own benefit or to cover a debt due it from a fiduciary.[4] This situation is also different from those in which a principal (here it would be the corporation, Chalmers Co., Inc.) is in a position, as this plaintiff was not, to show privity with the bank and notice on the part of the bank.[5] Nor is there any support for plaintiff in the theories of subrogation and constructive trust which she advances. Without attempting an analysis of those theories, we rule that they have no application to the facts of this case. We do not say that banks are never to be answerable in situations like this. We limit the scope of our ruling to the specific facts here involved.

*It was error to direct a verdict in favor of the individual defendant Prentice.*

■ There was evidence, some of it undisputed, from which the jury could have found that plaintiff reposed special confidence in Prentice, he being an ordained minister; that he and his wife were the only stockholders, directors and officers of the Chalmers Company; that he had rep-

resented to her that the corporation was financially sound and capable of building her house,[6] whereas in fact the corporation did not even have a bank account; that he assured her that the corporation could and would go to work on her house as soon as she paid the $2500; that he "would immediately begin to excavate for the basement of her proposed house and that they could have it completed to the first floor within a week; that he would put a crew of men to work at once." It was in evidence that no work was ever begun on the house and that the fifteen other houses he had told her he was building were actually completed under a trusteeship—he having later made an assignment for the benefit of creditors. Since we are considering only the propriety of the directed verdict, we need not discuss defendant's denials and explanations. We think the evidence was ample to take the case to the jury on the question of Prentice's personal liability for fraudulent misrepresentations; hence the judgment as to him must be reversed. On the retrial plaintiff should be given wide latitude in developing the full picture of the relationship between plaintiff and his corporation and the handling and disposition of corporate funds, including the $2500 received from this plaintiff.

■ This brings us to another contention of plaintiff which is that the trial judge erroneously barred her claim of fraud against the corporation and required her to go to the jury on the sole issue of breach of contract. We think plaintiff's position is correct. As we have seen, there was enough evidence to establish that Prentice had acted fraudulently; and the fraud of an officer engaged in corporate business becomes at law the fraud of the corporation.[7] But since plaintiff did obtain a full judgment against the corporation the question is now academic. And it seems clear

3. See Anacostia Bank v. United States Fidelity & Guaranty Co., 73 App.D.C. 388, 119 F.2d 455, 134 A.L.R. 995.

4. Ward v. City Trust Co. of New York, 192 N.Y. 61, 84 N.E. 585. See also Colby v. Riggs Nat. Bank, 67 App.D.C. 259, 92 F.2d 183, 114 A.L.R. 1065.

5. Code 1940, § 28-2304.

6. She testified that he showed her some papers indicating that he and a partner were engaged in a building program which he said involved $600,000 or $6,000,000, she was not sure which.

7. Am.Jur., Corporations, § 1125; 19 C J. S., Corporations, § 1087.

that she is not entitled to have that claim retried on two theories instead of one; for she could do no more than win it again.

Judgment affirmed as to Security Savings and Commercial Bank; judgment affirmed as to Chalmers Co., Inc.; judgment reversed as to James H. Prentice with instructions to award a new trial as to him.