MARYLAND CASUALTY COMPANY, Plaintiff, *v.* CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Defendant.
ERVANTE KIRK, Impleaded Defendant.

City Court of New York, New York County, June 29, 1934.

*Thomas J. Meehan, Jr.*, for the plaintiff.

*Allan C. Rowe*, for the defendant Chase National Bank of the City of New York.

*Vincent Yardum*, for the impleaded defendant, Ervante Kirk.

NOONAN, J. This is a motion for summary judgment by the plaintiff against the defendant the Chase National Bank. The Chase National Bank in turn asks for summary judgment against the impleaded defendant Kirk. The National Liberty Insurance Company of America was a depositor in the bank maintained by the Manufacturers Trust Company. As such depositor it drew, among others, the twelve checks involved in this action and directed its depository to pay paid checks to certain individuals, all of whom were non-residents and agents of the insurance company. The checks were issued to the payees in the payment of commissions. One Roy Ackerson was an employee of the insurance company and in some manner the checks came into his possession. Ackerson forged the names of the payees of the checks as indorsees thereof and with his own indorsement added he negotiated the checks with the defendant Ervante Kirk who was doing business under the name of the New York Stamp Company. The checks were negotiated for value, as Ackerson, who was a stamp collector, received from Kirk part cash and part merchandise in the form of stamps. Kirk deposited ten of these checks for collection with the Interstate Trust Company and two were deposited with the defendant the Chase National Bank. The latter bank had absorbed by merger the Interstate Trust Company. The checks were presented for

collection by the Chase National Bank to the Manufacturers Trust Company. The Chase National Bank indorsed the checks and guaranteed all prior indorsements. The checks were paid by the depository bank and the account of the National Liberty Insurance Company of America was accordingly debited to the amount of the checks. Plaintiff is a surety company and had issued a policy of insurance to the National Liberty Insurance Company of America agreeing to indemnify it and " any bank or banks in which the Insured carries a deposit account subject to check * * * as their respective interests may appear, against any loss, not exceeding in the aggregate the amount of Fifty thousand and 00/100 ($50,000.00) Dollars, which * * * may be sustained through the payment by the insured or the bank: — (1) of any check, draft, note or any other written promise, order or direction to pay a sum certain in money * * *; (b) Made or drawn by the Insured upon which the signature of any endorser thereof shall have been forged."

Plaintiff paid the loss occasioned by the forged indorsements of the checks and instituted this action against the collecting bank, the Chase National Bank, to recover the sum paid. The theory of the action is that the plaintiff is the assignee or subrogee by force of law of the rights of the National Liberty Insurance Company of America as drawer of the checks and of the rights of the drawee bank, Manufacturers Trust Company. Although the complaint alleged an assignment, no oral or written assignment from either the drawer or drawee bank is claimed. Subsequent to the commencement of the action the defendant the Chase National Bank, by order of the court, brought in Ervante Kirk as a party defendant. The Chase National Bank claims that if it is to be held liable to the plaintiff it has the right to recover from Kirk whatever sum is recovered. In its answering affidavit the defendant the Chase National Bank questions the reality of the forged indorsements and claims that it has a right to cross-examine the witnesses for the plaintiff on that point. In its brief, however, this defendant says nothing of this contention and seems to cast the entire burden of the defense upon the impleaded defendant Kirk. The evidence is so overwhelming in support of the claim that the indorsements of the payees of the checks were forged that cross-examination of the witnesses would be futile.

In the first place there are affidavits submitted which show beyond doubt that the names of the payees were forged. All of these affidavits except one are sworn to by the payees who swear that they never received the checks or their proceeds and did not indorse their names on them. The one exception is where the

payee is dead and with respect to that check there are affidavits by three separate officials of the bank where the deceased payee kept his account, to the effect that the signature of the payee on the back of the check is fictitious. The checks in qustion were made payable to payees, all of whom reside in States far distant from this city. The checks were cashed within two or three days of their issuance. This is an added reason to show that the payees did not have the opportunity to indorse their names on the checks.

Then again, Ackerson, the forger, indorsed his name on the checks right after the forged name of the payee. There is no dispute that Ackerson has been convicted of these forgeries and is now in prison. It is difficult to understand how any amount of cross-examination could overcome such evidence. The defense of the impleaded defendant Kirk is that the drawer of the checks was guilty of negligence in not detecting the forgeries of its own employees before the issuance of the checks in question. It is settled that the duty of the drawer towards its depository does not obligate him to examine the indorsements of the backs of his canceled checks. Such obligation is confined to the face of the checks. (*National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247, 254; *American Exchange Nat. Bank* v. *Yorkville Bank*, 122 Misc. 616; affd., 210 App. Div. 885.)

Furthermore, there is no privity between the drawer and the collecting bank and *a fortiori* between the drawer and the impleaded defendant Kirk and the drawer owes to these parties no duty of vigilance. (*Fallick* v. *Amalgamated Bank of New York*, 232 App. Div. 127; *City of New York* v. *Bronx County Trust Company*, 234 id. 244; *Manufacturers Trust Company* v. *Harriman Nat. Bank T. Co.*, 146 Misc. 551; *American Exchange Nat. Bank* v. *Yorkville Bank, supra.*)

In the natural sequence of events the drawer of the check would have a right of action against the drawee bank where the account of the drawer was debited on a forged indorsement of the payee's name because under such circumstances the drawee bank failed to pay the check in accordance with the direction of the drawer. A drawee bank which had paid checks the indorsements of which have been forged is in the position of having paid out its own money. This follows from the fact that the relation between the drawer and its depository is that of creditor and debtor and the creditor is entitled to have his money paid out solely in accordance with his directions. Payments made contrary to the directions of the drawer gave the drawee bank no right to charge such pay-

ments to the drawer and did not discharge any part of its indebtedness to the drawer. (*General Fire Assurance Co.* v. *State Bank*, 177 App. Div. 745; *American Exchange Nat. Bank* v. *Yorkville Bank, supra.*)

Under the circumstances narrated, the depository bank is not without remedy. If the checks with forged indorsements have been sent to it for collection, it has a right of action against the collecting bank which has guaranteed all prior indorsements. In *Fallick* v. *Amalgamated Bank of New York* (*supra*) the court said: " The liability of the collecting bank to repay the moneys paid out on forged indorsements which were guaranteed by the collecting bank to the depository bank is absolute, and not in any wise dependent upon the liability of the depositary bank to its depositor." In turn upon the said principles the collecting bank has its remedy against the one from whom it received the checks upon his indorsement and if it be established that such person is the one who has forged the indorsements, he is the one who must eventually pay for his wrongdoing. (*American Exchange Nat. Bank* v. *Yorkville Bank, supra.*)

Applying these principles to the case at bar, it appears that the plaintiff who had insured the drawer of the checks and the depository bank against forged indorsements on checks drawn against the latter paid the loss to the drawer, and, of course, is entitled to be subrogated to such rights as the drawer has against its depository. The question here is whether it is also entitled to the remedy of the depository against the collecting bank upon the latter's guaranty of prior indorsements. It is contended upon the authority of *General Fire Assurance Co.* v. *State Bank* (177 App. Div. 745) that the collecting bank did not become liable to the drawer since the drawer had a complete remedy against the drawee bank and for that reason suffered no damage. It is true that the drawer has the right to proceed against the drawee bank by reason of the latter having debited its account contrary to its directions. It is to be assumed that the drawer was obligated to make good the amounts specified in the checks to the payees thereof. The drawer, therefore, suffered damage and could proceed as already stated against its depository for the wrongful debit of its account. Instead of doing this it collected the loss from its insurer, the plaintiff in this action. Plaintiff, however, not only insured the drawer but also the drawee bank. Having reimbursed the drawer for its loss it became subrogated by law to the rights of the drawer against the depository bank. If it had enforced these rights and sued for the amount which it had paid to the drawer under its policy of insurance, it would be met by an offset of the depository bank by virtue of the

same policy of insurance. In other words, the depository bank could claim that the loss which it was called upon to pay was also insured by the plaintiff.

Such an action by the plaintiff against the depository bank would be an idle procedure. Therefore, why could not the plaintiff pay the drawer for the loss as it was obligated to do by its policy of insurance and be subrogated to the rights of both drawer and depository bank? This payment to the drawer was a short cut settlement of liability. To be sure the plaintiff might have paid the depository bank and if that was done the latter would in turn be obligated to turn the payment over to the drawer. If such a course had been pursued there could be no question of the right of the plaintiff as subrogee of the depository bank to call upon the collecting bank for payment. Under the circumstances here presented I do not think that the plaintiff which had insured both drawer and depository bank was required to do this. Certainly the collecting bank should not be permitted to escape its liability on its guaranty of the validity of the indorsements on the checks.

The motion of the plaintiff for summary judgment against the Chase National Bank is granted, with appropriate interest and costs, and the motion of the Chase National Bank for summary judgment against the impleaded defendant Kirk is likewise granted, with appropriate interest and costs. Execution is stayed for three days after notice of entry of judgment. Order signed.