18115

W. WESLEY SINGLETARY & SON, INC., Respondent, v. LAKE CITY STATE BANK, Appellant

(133 S. E. (2d) 118)

*Messrs. D. Laurence McIntosh* and *Wright, Scott, Blackwell & Powers,* of Florence, and *S. Russell Floyd,* of Lake City, *for Appellant,*

*Messrs. E. LeRoy Nettles* and *Nettles & Thomy,* of Lake City, and *Lewis C. Trice,* of Columbia, *for Respondent,*

October 31, 1963.

BRAILSFORD, Justice.

Over a period of several years, an employee of W. Wesley Singletary & Son, Inc. fraudulently caused checks to fictitious

payees to be drawn on his employer's payroll account in Lake City State Bank and cashed them on forged endorsements. This action is by Singletary against the Bank for $14,879.44, the sum of such checks which were charged to its account. The Bank pleaded, as its fifth defense, that $13,250.00 had been paid to Singletary by an insurance company under a fidelity bond or insurance policy, which, for most of the period in question, insured Singletary against loss from employee defalcations; that, to the extent of this payment, Singletary is not entitled to a "dual recovery," and that the insurance company, having been paid to assume the risk which caused plaintiff's loss, is not entitled to the benefit of the equitable doctrine of subrogation for the reason that in equity the loss should fall on the paid surety rather than on the innocent bank.

Shortly after the forgeries were discovered, St. Paul Mecury Insurance Company advanced to Singletary the sum of $13,250.00, representing the aggregate of fraudulent checks cashed during the term of the fidelity bond and took from Singletary a loan receipt. By this instrument, Singletary, in effect, acknowledged receipt of the sum of money as a loan, repayable, without interest, only out of any recovery from the Bank in excess of the sum of the fraudulent checks not included in the amount advanced, and agreed to bring an action against the Bank in its own name looking toward such recovery. Taking the position that the transaction between it and the insurance company, as evidenced by the writing, was a loan instead of payment of a covered loss, Singletary moved to strike the allegations of the fifth defense as sham and irrelevant. Relying upon *Martin v. McLeod,* 241 S. C. 71, 127 S. E. (2d) 129, the circuit court granted the motion and this appeal followed.

In *Martin,* plaintiff's insured property was destroyed by fire as a result of the defendant's tort. The insurance company advanced the amount of the loss to plaintiff and took from her a loan receipt similar to the one involved here. The tort-feasor sought to defend the action on the ground that

plaintiff had received payment from the insurance company, which had become subrogated to her rights and was the real party in interest. Relying upon former decisions from this and other jurisdictions, we sustained the right of the owner to sue in her own name, saying:

"The defendant was a stranger to the insurance contract, and plaintiff and her insurer were free to contract with each other as they saw fit without affecting his rights. By shaping their transaction as a loan, they left the defendant as if the property had not been insured, or as if they had postponed settlement. He can be sued only once and has no interest to protect by impeaching their motives. We hold that the loan receipt is a lawful device by which subrogation was avoided and under which plaintiff was entitled to bring the action in her own name." 127 S. E. (2d) 131.

*Martin* holds that the parties to an insurance settlement may avoid equitable subrogation by shaping their transaction as a loan, where no prejudice to the party causing the loss is shown. There was no prejudice in *Martin* because any defense available to the defendant against the insurer as subrogee was equally so against the insured. In other words, under facts similar to those in *Martin,* the right of the insurer to recover from a third person who caused the loss is absolute, if the owner could have recovered. On the other hand, a surety on an employee's fidelity bond, upon payment of a covered loss, has no right of recovery against a third person merely upon proof that the protected employer could have recovered from such person. This difference in facts requires a statement of our reasons for concluding that the transaction between Singletary and the insurance company was intended as a loan or conditional payment and does not impair Singletary's right to pursue its claim against the appellant.

The relationship between a bank and a general depositor is that of debtor and creditor; and, ordinarily, a bank can not charge against the drawer's account a check payable to a named payee and paid upon a forged

endorsement. 7 Am. Jur., Banks, Sec. 590, pg. 427. This rule is fully applicable here unless the Bank can establish one of the affirmative defenses set up by its answer. Otherwise, the relationship of debtor and creditor between the Bank and Singletary was unaffected by the debits attributable to forged endorsements and the loss fell on the Bank.

The allegations of the fifth defense impliedly concede the Bank's initial liability to its depositor and its continued liability to it for the checks which were not included in the sum advanced by the surety. The plea is in mitigation to the extent of the claimed payment by the surety and has no place in the answer except as an alternative to other defenses by which the Bank denies liability and seeks dismissal of the action. The same facts which, for the purposes of this defense, establish the Bank's liability also establish its duty to credit Singletary's account by the full amount claimed in this action, and this duty arose as soon as the forgeries were discovered. In short, for the purposes of this defense, the loss fell on the Bank and was not covered by the fidelity bond, which provided no indemnity to third persons against loss from the fraud of Singletary's employees or otherwise.

When the forgeries were discovered, the Bank could not credit Singletary's account without waiving its defenses and exonerating the surety. The surety could not pay Singletary's claim as a covered loss without exonerating the Bank. Yet Singletary was protected in any event and was entitled to the present use of its money. The loan receipt transaction was a convenient device by which the impairment of Singletary's working capital was promptly restored without waiver of the issue of whether the loss was covered by the fidelity bond. This question will be resolved on the merits by the judgment herein. If, as between the parties to this action, the loss fell on Singletary, the paid surety will bear it. Otherwise, the surety incurred no liability, and the Bank can not justly complain that the parties to the indemnity contract shaped their transaction

so as to preserve the surety's right to have the question of coverage decided by the court.

The often quoted words of Mr. Justice Brandeis in *Luckenbach v. W. J. McCahan Sugar Ref. Co.,* 248 U. S. 139, 39 S. Ct. 53, 55, 63 L. Ed. 170, 1 A. L. R. 1522, in countering the argument that a similar loan receipt should be disregarded as fictional, are in point:

"* * * But no good reason appears either for questioning its legality or for denying its effect. * * * It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice."

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.