# 18832

The SOUTH CAROLINA NATIONAL BANK OF CHARLESTON, Appellant, v. LAKE CITY STATE BANK and Hartford Accident and Indemnity Company, Respondents.

(164 S. E. (2d) 103)

Messrs. *F. Dean Rainey,* of Greenville, South Carolina, and *Sinkler, Gibbs & Simons,* of Charleston, South Carolina, *for Appellant,*

Messrs. *D. Laurence McIntosh* and *Wright, Scott, Blackwell & Powers,* of Florence, and *S. Russell Floyd,* of Lake City, *for Respondents,*

October 30, 1968.

BRAILSFORD, Justice.

This is the second appeal in this case, the third in litigation stemming from the check endorsement forgeries of a job foreman of W. Wesley Singletary & Son, Inc., in which the several victims of his fraud are seeking to adjust their losses. We shall strive to avoid unnecessary repetition of the background facts and proceedings, which are stated in our two former opinions. See *W. Wesley Singletary & Son, Inc., v. Lake City State Bank,* 243 S. C. 180, 133 S. E. (2d) 118, and *South Carolina Nat'l. Bank of Charleston v. Lake City State Bank,* 246 S. C. 287, 143 S. E. (2d) 584.

This appeal is from an order of the circuit court allowing recovery by Lake City, the drawee bank, against SCN and eleven other forwarding banks of $14,529.02, the full amount recovered by Singletary against Lake City because of checks cashed by the forwarding banks, or their customers, on forged endorsements and charged by Lake City to Singletary's payroll account. Lake City cashed some checks without the intervention of forwarding banks, and the sum actually paid to Singletary, including an adjustment of interest, was $16,500.00. The forwarding banks acknowledge their *pro rata* liability for Lake City's out-of-pocket loss of $6,500.00. The dispute is about $10,000.00 which, after the commencement of this action, was paid or advanced to Lake City by its forgery insurer, Hartford Accident and Indemnity Company, under a loan receipt agreement. This was the maximum forgery coverage afforded by the indemnity contract. The basic error assigned by the exceptions is that Lake City's recovery should have been limited to the excess of its loss over the sum received from Hartford.

After demand by Lake City that the guaranty of prior endorsements on the forwarded checks be honored, SCN took up the cudgels by bringing this action to enjoin Lake City and Hartford from entering into any agreement or pursuing any action which would deprive SCN of "the time honored defense that, absent other equities, a paid surety may not recover directly or indirectly from an innocent bank." The complaint mistakenly alleged that Hartford had indemnified Lake City for the full sum of the spurious checks. The equity asserted is that the so-called loan receipt, under which the payment was made, is merely a legalistic device resorted to for the sole and inequitable purpose of depriving SCN of this equitable defense, which would be available to it if Hartford should be required to sue in its own name as subrogee, and that equitable relief is essential to the preservation of this defense.

Lake City by counterclaim appropriately pled its cause of action against SCN on the latter's guarantee of prior en-

dorsements on ninety-six checks totaling $5,952.19.[1] By its reply SCN re-alleged the facts on which the complaint based its claim to equitable relief. The action was heard on stipulated facts and submitted to the court "for a decision on the merits as to whether or not Lake City and/or Hartford can recover of SCN and if so, in what amount." Without suggesting that the result is affected by waiver of SCN's novel claim to injunctive relief, we observe that the issues thus submitted arise on the counterclaim and reply. The case is the same as though the only pleadings were a complaint by Lake City, of the tenor of its counterclaim, and an answer by SCN, of the tenor of its reply.

Lake City states a cause of action at law against SCN based upon the latter's refusal to honor its guarantee of forged endorsements and the resulting loss to Lake City. SCN's pleading undertakes to set up four defenses to this cause of action. Three of these defenses have been foreclosed by prior proceedings in the cause. This appeal is from the disallowance by the circuit court of the remaining defense. This defense simply incorporates by reference the allegations of the complaint by which SCN sought equitable relief against the employment by Lake City and Hartford of the loan receipt device as a means of suing SCN in the name of Lake City, but for the benefit of Hartford, and thereby depriving SCN of an equitable defense allegedly available to it in an action by Hartford as subrogee.

When these pleadings were filed and the issues joined between Lake City and SCN, Lake City had received nothing from its insurer on account of the $16,500.00 paid to Singletary. It was not only entitled to sue in its own name but had no other recourse. More than thirty days after the commencement of the action, Hartford paid $10,000.00 to Lake City under the questioned loan agreement. This instrument was upon the same terms as the loan receipt involved in the *Singletary* case, *supra,* 243 S. C. 180, 133 S.

---

[1] By stipulation SCN represents all forwarding banks, and all will contribute *pro rata* to the amount adjudged to be due Lake City.

E. (2d) 118. The amount received by Lake City was far short of its claim against the forwarding banks. Therefore, even regarding the loan receipt transaction as an absolute payment, the title to the cause of action declared upon was unaffected thereby. Following settled law, *Pringle v. Atlantic Coast Line R. R. Co.,* 212 S. C. 303, 47. S. E. (2d) 722; *S. C. Elec. & Gas Co. v. Aetna Life Ins. Co.,* 230 S. C. 340, 95 S. E. (2d) 596, we held on the former appeal in this case that Lake City remained "the real party in interest and is entitled to maintain its counterclaim without regard to or reliance upon the loan agreement between the parties." 246 S. C. at 298, 143 S. E. (2d) at 589. In this situation, the loan receipt, against which SCN directed its claim to equitable relief, cuts no figure. Its sole purpose was to avoid subrogation and to permit the pursuit of the forwarding banks by Lake City. Since partial indemnity would not have resulted in subrogation if the payment had been absolute, the loan receipt is a useless form which SCN has no standing to impeach. ·

Hartford seeks no affirmative relief, and the only possible remaining question on the merits, upon a most·liberal construction of the relevant pleadings, is whether Lake City's right of recovery against SCN is to be diminished by the partial indemnity received by Lake City under its insurance contract with Hartford.

SCN is being sued on its absolute liability to restore Lake City's money which it received, albeit in good faith, in exchange for spurious paper, and which it retains contrary to law and its express contract. In the exercise of its business judgment, with full knowledge of the recurring risks involved and the premiums to be saved, SCN contracted for forgery insurance with a $25,000.00 deductible clause. It thereby elected, in order to save the premium differential, to be a self-insurer against losses up to this figure. No good reason appears for giving this self-insurer the benefit of insurance procured by Lake City solely for its own protection and paid for by it.

We see nothing inequitable in the fact that a portion of Lake City's recovery will go to Hartford. Forgery insurance is not a one shot proposition. Premiums are part of the annual cost of conducting a banking business and are related to loss experience. Lake City serves its own interest by pursuing SCN, in part, for the benefit of its insurer. Lake City, to whom the cause of action belongs, is, in effect, plaintiff, and SCN has no defense against it.

Furthermore, although the point will not be decided, we are not convinced that SCN would have a defense against Hartford if the latter had paid full indemnity to Lake City and sued as subrogee. The great majority of cases, supporting the paid surety defense to subrogation claims against banks on forged checks or endorsements, involves sureties on fidelity bonds of employees or officers. Such a surety has usually been denied subrogation to the rights of the indemnified obligee (employer) against third persons who have been mulcted by the surety's principal (employee). See Annot., 137 A. L. R. 700. One court has said that "subrogation will not operate against an innocent person wronged by a principal's fraud." *American Sur. Co. of New York v. Bank of California,* 133 F. (2d) 160 (9th Cir. 1943).

On the other hand, in the only cases in point which have come to our attention, insurers against forgery losses have been allowed subrogation to the rights of their insureds against forwarding banks or other prior endorsers. *Maryland Cas. Co. v. Chase Nat'l. Bank of City of New York,* 153 Misc. 538, 275 N. Y. S. 311; *First & Tri State Nat'l. Bank & Trust Co. of Fort Wayne v. Massachusetts Bonding & Ins. Co.,* 102 Ind. App. 361, 200 N. E. 449; *New York Cas. Co. v. Sazenski,* 240 Minn. 202, 60 N. W. (2d) 368. In *Metropolitan Cas. Ins. Co. v. First Nat'l. Bank,* 261 Mich. 450, 246 N. W. 178, subrogation was allowed under the terms of the forgery bond, [2] the court recognizing that without this provision the insurers' right to subrogation "might be open to question." In *Standard Acc. Ins. Co. v.*

---

[2] The terms of Hartford's bond are not reflected by the record.

*Pellecchia,* 15 N. J. 162, 104 A. (2d) 288, Chief Justice Vanderbilt carefully reviewed the authorities and declared that generally an insurer is entitled to subrogation to the contractual claims, as well as tort claims, of its insured against third persons. This strong 1954 decision repudiated the paid surety defense even in fidelity bond cases, except where the evidence shows unconscionable conduct on the part of the insured or its insurer. See also O'Malley, "Subrogation Against Banks on Forged Checks," 51 Cornell L. Q. 441 (1966). This comprehensive article tends to support the view that Hartford could recover as subrogee.

We have called attention to these authorities principally because it was assumed by counsel and the court in *Singletary, supra,* 243 S. C. 180, 133 S. E. (2d) 118, that the paid surety doctrine, as settled law, would have defeated a subrogation action by Singletary's insurer against Lake City, and because we have paid lip service to the defense in other cases, *Rivers v. Liberty Nat'l. Bank of Columbia, S. C.,* 135 S. C. 107, 133 S. E. 210, and *United States Fidelity & Guar. Co. v. First Nat'l. Bank of South Carolina of Columbia,* 244 S. C. 436, 137 S. E. (2d) 582. However, an examination of our decisions discloses that we have never denied subrogation by applying the paid surety versus innocent bank criterion and are not committed to the doctrine. Recognizing that serious challenges have been leveled against the usefulness and practicality of the compensated surety defense under modern banking practices, we observe that the law thereabout is unsettled in this jurisdiction.

Affirmed.

Moss. C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.