1808

STONE MANUFACTURING COMPANY, Appellant v. NCNB OF SOUTH CAROLINA, Respondent v. Johnda M. BURKE, Defendant.

(417 S.E. (2d) 628)

Court of Appeals

*Robert C. Wilson, Jr.*, Greenville, *for appellant.*

*Richard M. Smith* and *David J. Mills*, of *McNair Law Firm*, Columbia, *for respondent.*

Heard March 10, 1992.

Decided April 27, 1992.

SHAW, Judge:

Appellant, Stone Manufacturing Company, instituted this action against respondent-bank seeking to recover money debited to its account with the bank based on fraudulently drawn checks. Applying a provision of the U.C.C., the trial judge granted a directed verdict for the bank following the presentation of all evidence. We affirm.

Johnda Burke worked in the payroll section of Stone's Columbia office and had sole responsibility for ordering checks from Stone's main office in Greenville. For several years she pursued a scheme of cashing fraudulently drawn Stone checks at a small branch of NCNB. She procured the false checks by ordering them in the names of employees who were on leave or who had recently left the company and by requesting supplemental checks for active employees, ostensibly to correct errors in their pay. When the Greenville office sent the checks, Burke picked them up from the post office and cashed them at an NCNB branch office. She endorsed the payee's name on most of the checks.

Ms. Burke was well known at NCNB as an employee of Stone, which was a good customer of NCNB. The bank has written procedures which would have required her to present authorization to cash checks for someone else, but because she was known at the bank, the bank personnel applied a relaxed policy toward her, apparently believing she was cashing the checks as a service for employees who could not come to the bank. Ms. Burke supplied the names of the payees intending them to have no interest in the checks. During the course of her scheme, she obtained over $176,000.

Stone asserted several causes of action against NCNB. At the close of all evidence, the trial judge granted NCNB's directed verdict motion finding S.C. Code Ann. § 36-3-405(1)(c) (1976), known as the padded payroll defense, to be controlling.

He further ruled, even if the bank's lack of good faith constituted an exception to this defense, the facts of this case did not show lack of good faith on the part of the bank.

On appeal, Stone contends there is evidence the bank was negligent and failed to meet its obligation of good faith and, therefore, a jury issue was created as to whether the bank is precluded from asserting the padded payroll defense. Specifically, Stone points to evidence that the checks were not endorsed at the bank, Ms. Burke never presented identification or authorization, and the bank failed to meet its own guidelines in cashing the checks.

This is a question of first impression in South Carolina.

§ 36-3-405(1)(c) provides:

An indorsement by any person in the name of a named payee is effective if . . . an agent or employee of th maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

Official Comment 4 to this section states:

Paragraph (c) is new. It extends the rule of the original Subsection 9(3) to include the padded payroll cases, where the drawer's agent or employee prepares the check for signature or otherwise furnishes the signing officer with the name of the payee. The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.

The provision applies only to the agent or employee of the drawer, and only to the agent or employee who supplies him with the name of the payee. The following situations illustrate its application.

a. An employee of a corporation prepares a padded payroll for its treasurer, which includes the name of P. P does not exist, and the employee knows it, but the treasurer

does not. The treasurer draws the corporation's check payable to P.

b. The same facts as a, except that P exists and the employee knows it but intends him to have no interest in the check. In both cases an indorsement by any person in the name of P is effective and the loss falls on the corporation.

Further, the *South Carolina Reporter*'s Comments state as follows:

Another pattern of the fraudulent employee is illustrated by the payroll clerk who, not having authority to draw checks, submits a list of names or fills out checks which are signed by the employer or some other official of the company. The fraudulent payroll clerk then takes the checks and indorses them in the name of the payee. The drawee bank, recognizing the drawer's signature, pays them. When the fraud is discovered the employer demands recrediting of his account. . . . [T]he . . . case of *W. Wesley Singletary & Son, Inc. v. Lake City State Bank,* 243 S.C. 180, 133 S.E. (2d) 118 (1963) seemed to assume the bank's liability in such a situation. Here, Code Section 3-[405](c), would change this rule . . . by the statement that the indorsement by the employee is effective, thus placing the loss on the drawer-employer and not the payee bank.

A majority of jurisdictions confronted with the issue of a bank's negligence in the application of the padded payroll defense have "recognized the import of the code section to be that any loss arising from situations provided for therein should fall upon the employer and negligence on the part of the bank is irrelevant." *Northbrook Property & Casualty Insurance Company v. Citizens & Southern National Bank,* 184 Ga. App. 326, 361 S.E. (2d) 531 (1987). Strong support for this position is found in the fact that § 36-3-405 makes no reference to the bank's negligence as an exception to its application while Official Comment 4 clearly indicates the loss should fall upon the employer of an unfaithful employee as a risk of business. If the drafters had intended to make the bank's negligence an exception to the padded pay-

roll defense, they could have easily so provided, just as they delineated a standard of care for banks under S.C. Code Ann. § 36-3-406 (1976) as a condition to invoking it as a statutory defense.[1] Accordingly, we hold a bank's negligence is immaterial to the application of § 36-3-405(1)(c).

However, Stone also argues lack of good faith on the part of the bank is a defense to § 36-3-405(1)(c) and the evidence created a jury issue as to the bank's lack of good faith.

S.C. Code Ann. § 36-3-102 (1976), entitled "Definitions and index of definitions" provides under subsection (4) as follows:

In addition Chapter 1 of Title 36 contains general definitions and principles of construction and interpretation applicable throughout this chapter.

Under Chapter 1, S.C. Code Ann. § 36-1-203 (1976) provides "Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement." S.C. Code Ann. § 36-1-201(19) (Supp. 1991) defines "good faith" as "honesty in fact in the conduct or transaction concerned." At the most, the evidence of the bank's conduct in this matter demonstrated mere negligence. We agree with th the trial judge that, even if lack of good faith is an exception to the padded payroll defense, there is no evidence the bank's actions lacked "honesty in fact."

For the foregoing reasons, we hold the trial judge properly directed verdict for NCNB.

Affirmed.

GARDNER and GOOLSBY, JJ., concur.

---

[1] § 36-3-406 provides:

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument *in good faith and in accordance with the reasonable commercial standards* of the drawee's or payor's business. (Emphasis added.)