NATIONAL SURETY COMPANY, Appellant, v. BANKERS TRUST COMPANY, Appellee.

No. 39956.

JANUARY 21, 1930.

REHEARING DENIED APRIL 16, 1930.

*F. S. Dunshee,* for appellant.

*Sargent, Gamble & Read,* for appellee.

DE GRAFF, J.—One question only is presented on this appeal. Does the amended and substituted petition, as amended, state a cause of action? The answer must be found in the well pleaded averments of the petition.

It is first alleged that the plaintiff, National Surety Company, on or about the first day of July, 1921, made and entered into a certain contract or bond in writing with the Des Moines Life & Annuity Company, a copy of which bond was attached to the petition and marked "Exhibit A." This fidelity bond insured the Des Moines Life & Annuity Company of Des Moines, Iowa, as employer, against such pecuniary loss which the employer may sustain of money or other personal property (including that for which the employer is responsible) by acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication of funds, directly or through

connivance with others, by any employee named in the schedule attached to and made a part of said bond. It is further alleged that this contract or bond was duly delivered, and went into full force and effect. It is further alleged that the said Life & Annuity Company, during the period while said bond was in full force and effect, did sustain losses "through the fraud, dishonesty, forgery, theft, larceny, embezzlement, and wrongful abstraction committed by W. H. Dunagan, its chief clerk, who was covered by the terms of said contract, for which the National Surety Company became liable." It is further alleged that the said National Surety Company did, on the 11th day of January, 1928, on demand of said Des Moines Life & Annuity Company, pay to the said Life & Annuity Company, in settlement of its liability for said loss, through the forgery of said Dunagan, under and by virtue of the terms of said contract, the sum of $2,500, being its maximum liability under said bond; that the said losses consisted of bank drafts which reached the office of the said Des Moines Life & Annuity Company, and were its property, and were taken by said W. H. Dunagan from its files and cashed by the Bankers Trust Company.

It is further alleged that the said Annuity Company did sell and assign all its rights to plaintiff by an agreement in writing, in words and figures following, to wit:

"In consideration of the payment to Des Moines Life & Annuity Company by National Surety Company of the sum of Twenty-five Hundred Dollars ($2,500.00) said Des Moines Life & Annuity Company hereby assigns to said National Surety Company all its right, title and interest in and to the following cashier's checks and drafts, same being among the various items set up in the claim of said Des Moines Life & Annuity Company against said National Surety Company dated January 11, 1928, under fidelity bond issued by said National Surety Company to said Des Moines Life & Annuity Company covering William Dunagan."

There is also set out in the petition a list of the drafts, giving the numbers thereof, respectively, the names of the drawer banks, respectively, respective dates thereon, the names of the drawee banks, respectively, and the amount of each of said drafts. It is further alleged in separate counts (1 to 18) that

each of said drafts, respectively, came into the hands of the said W. H. Dunagan, as the chief clerk of the said Annuity Company, and that each of said drafts was abstracted from the funds of said company, and that the indorsement on each of the drafts so set out in said list was forged by Dunagan, and that the defendant Bankers Trust Company, through the wrongful act of the said Dunagan, obtained possession of each of said drafts, and thereupon collected and received the proceeds of the same and appropriated the same to its own use, thereby damaging the said Des Moines Life & Annuity Company in the amounts of said drafts, respectively, or in the aggregate sum of the total of said drafts, and that there is now due and owing to plaintiff Surety Company from defendant Bankers Trust Company the full amount of each draft received by the defendant, with 6 per cent interest from the date said sum of money was received by the defendant Bankers Trust Company.

The defendant Bankers Trust Company filed a demurrer to the amended and substituted petition, on the primary ground that said petition does not entitle the plaintiff to the relief demanded, or to any relief, for the specific reason that, on the face of said petition, the sum of $2,500 was paid by the plaintiff to the Des Moines Life & Annuity Company in fulfillment of a direct, actual, primary liability of plaintiff to said Annuity Company, and that by reason thereof plaintiff did not become subrogated to any claim or rights against this defendant, because, under the facts and circumstances pleaded, the purported assignment of the right, title, and interest of said Annuity Company in and to the drafts mentioned in said petition did not vest in the plaintiff, as a matter of law, any such right of action as pleaded.

This demurrer was sustained, and, after due exception, the plaintiff filed an amendment to its amended and substituted petition, wherein it is averred that the assignment in question was intended to cover and assign, not only the instruments described and referred to in said assignment, but also all causes of action belonging to the assignor arising or growing out of said instruments, and especially assignor's right of action against the Bankers Trust Company on account of its wrongful payment of said written instruments; and that such was the under-

standing by and between the officers of the said Annuity Company and the plaintiff.

The defendant Trust Company then filed a motion to strike, and for judgment, on the ground that the matters alleged in the amendment, even if true, are irrelevant and redundant, and that such an understanding was not binding upon this defendant, and that any evidence to establish such an understanding would be incompetent.

Thereupon, the court sustained the said motion for judgment, and entered of record a judgment of dismissal of the cause, and taxed the costs to the plaintiff.

But one question is presented for decision. Should the demurrer have been sustained? At the outset, it may be noticed that the theory or doctrine of subrogation is not involved in the instant case. We are privileged to take the appellant Surety Company at its word, since it frankly concedes that the "subrogation equities of the National Surety Company do not extend beyond the right to sue the defaulting employee [Dunagan]." We are not concerned here with any remedy the bank had against the embezzler and forger Dunagan. The claim of the appellee bank that the obligation of the Surety Company was a direct, actual, primary liability may also be conceded. This action is predicated on an assignment. It may be well to first inquire what remedies, concurrent and not inconsistent, the Des Moines Life & Annuity Company had, upon its discovery of Dunagan's peculations from the treasury of his employer. The Annuity Company could have commenced an action against Dunagan, to recover the value of whatever personal property he had wrongfully appropriated from the treasury of the said Annuity Company, his employer; but it was not legally bound to do so. It did not exercise this right. Furthermore, the Annuity Company had an action against the defendant Bankers Trust Company for the paying of the forged instruments in question in the amount by it so paid. The title to this paper did not pass to the bank. The payee Annuity Company never ratified or affirmed the act. Did this right of action terminate and become extinguished when the plaintiff Surety Company voluntarily paid to the insured Annuity Company the sum of $2,500, the maximum liability? It is obvious that, without an assignment (excluding the theory of subrogation by appellant's concession),

the Surety Company could not sue the Bankers Trust Company, for the reason that there was no privity existing between the Surety Company and the bank. The Bankers Trust Company was an entire stranger to the contract between the Annuity Company and the Surety Company. The fidelity bond or contract was one of indemnity, and payment of the indemnity was not a payment of the bank's liability to the Annuity Company. The plaintiff Surety Company did not pay the bank's liability, and did not, impliedly or otherwise, intend to do so. In brief, the Surety Company, in discharging its contract obligation with the Annuity Company, was not thinking, in terms, of the liability of the Bankers Trust Company to the Annuity Company. The Surety Company did not dispute its liability under the contract, but paid it; and the clear intendment of the assignment was to assign a right of action then existing in the Annuity Company against the Bankers Trust Company. The defendant bank did pay forged instruments, and received the proceeds which legally belonged to the Annuity Company. The bank did not secure title to the instruments that were paid by it. The payment was due to another. The act of the forger Dunagan passed no title to the defendant bank as to the written instruments so forged. The bank was under no obligation to pay these instruments, and it did so at its peril. Section 9483, Code, 1927, provides:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

This provision makes the forged signature inoperative, and the inhibition precludes a recovery on the instrument against any person where the right of recovery is predicated on such inoperative signature. It is apparent from the petition that the defendant bank secured its apparent title through forged indorsements. Clearly, a cause of action existed in the Annuity Company against the defendant bank, and the liability of the latter did continue after the payment of the indemnity to the insured Annuity Company. This is not a case involving double

payment. The right to the proceeds, arising from the liability of the bank, if any, to the Annuity Company, was simply a matter to be adjusted between the parties to the indemnity contract. They did adjust it by the assignment in question, and · the reference therein to ''cashier's checks and drafts'' is merely descriptive. The thing assigned was a cause of action for money had and received, or for conversion, at the election of the Annuity Company. The Annuity Company continued to own the drafts, and continued all of its cause of action thereon, whether in tort or on ratification for money had and received. The bank had a liability to the Annuity Company, and the assignment simply gave the Surety Company the right to enforce such action which the Annuity Company had at that time against the defendant bank. We are not here concerned with any right or remedy which the defendant bank may have against any person, natural or artificial.

A quite analogous case, both on principle and facts, is *Grubnau v. Centennial Nat. Bank,* 279 Pa. St. 501 (124 Atl. 142). In that case, the action was commenced by Henry Grubnau and others, who were doing business under the trade name of Grubnau Brothers, against the defendant Centennial National Bank, which had cashed a forged check for $4,000, through the forgery of an employee of Grubnau Brothers. The Aetna Casualty & Surety Company had issued its fidelity bond to Grubnau Brothers in the sum of $5,000, to insure the firm against loss arising from the misconduct of its employees. Claim was made against the Surety Company for the loss by embezzlement of one of its employees. The Surety Company paid its maximum liability on the indemnity contract, and in turn took an assignment of Grubnau Brothers' claim against the defendant bank, and sued as a use-plaintiff in behalf of the Surety Company. In the case at bar, the Des Moines Life & Annuity Company, had it desired, could have commenced the action in its own name in behalf of the plaintiff Surety Company. The Pennsylvania decision referred to above establishes this proposition beyond cavil. Note the language of the opinion:

''Grubnau's legal status was not that of the holder of a claim against two indemnitors, where payment of damages by the one may be offset in a suit against the other. * * * The remedies cannot surely be considered in the same right. The in-

surance was not in ease of the bank's mistake. It would be a novel proposition to hold that an insurance contract could reach out to indemnify a stranger, in no way a party to the insurance, whose wrongful act caused the insurance company to pay loss to the insured which would not have occurred but for the wrongful act. Such protection would be given without cost or contractual relation, merely because the person wronged chooses to collect from the insurance company first, rather than the bank, which afterwards disputed the claim on this and other grounds connected with the forged check. * * * The use-plaintiff, the insurance company, is now suing on an assignment of that debt or right in the legal plaintiff to collect from the bank its deposit. While ordinarily a double recovery for the same loss should not be permitted (and here it is not), the claim under which such rule is enforced must be in the same right,—so interrelated that a recovery from the one effects a hardship on the other which would not occur except for the recovery. * * * Indeed, so far as the bank is concerned, we do not understand how it would be in a position to hinder Grubnau from following both remedies, regardless of supposed inconsistency of demand. * * *. Had the insurance company permitted plaintiff to use both remedies, assuredly the bank could not have complained. * * * Instead of sending the parties to court to establish loss, it [Surety Company] took over what might have been a debatable claim, through purchase and assignment. The rights are not inconsistent, in that they are of the same quality or cover the same subject-matter."

We hold, therefore, that the Annuity Company had something to assign. It did assign, and consequently the plaintiff Surety Company had a cause of action against the defendant Banker's Trust Company. The demurrer to plaintiff's amended and substituted petition, as amended, should have been overruled.—*Reversed.*

MORLING, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.

ALBERT, WAGNER, and GRIMM, JJ., dissent.