555 P.2d 333

**LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Appellant,**

v.

**THUNDERBIRD BANK, Appellee.**

**No. 12432–PR.**

Supreme Court of Arizona,
In Banc.

Sept. 7, 1976.

Gust, Rosenfeld, Divelbess & Henderson by Harold H. Swenson, Phoenix, for appellant.

Jennings, Strouss & Salmon by Thomas J. Trimble and I. Douglas Dunipace, Phoenix, for appellee.

CAMERON, Chief Justice.

This is a petition for review by plaintiff Liberty Mutual Insurance Company ("Liberty") of an opinion of the Court of Appeals, Division One, 25 Ariz.App. 201, 542 P.2d 39, affirming an order of the trial court denying Liberty's motion for summary judgment and granting the motion of the defendant Thunderbird Bank ("Thunderbird") for summary judgment.

The following questions are presented on appeal:

1. May Liberty, as the assignee of the Charles Bruning Company, maintain an action against Thunderbird, and is the "compensated surety defense" available to Thunderbird?

2. Assuming that it is otherwise entitled to relief, is Liberty bound by the election of remedies taken by its insured and thus precluded from recovery against Thunderbird?

The facts necessary for a determination of this matter are as follows. From 1 June 1964 through 24 March 1967, defendant James L. Coffelt was Branch Manager of the Phoenix office of the Charles Bruning Company ("Bruning"). Over an eleven month period between April 1966 and March 1967, Coffelt intercepted some 200 checks drawn by customers of and made payable to Bruning. Each of the intercepted checks, endorsed "Charles Bruning Company by J. L. Coffelt," was cashed by Coffelt at Gene's Modern Market in Glendale, Arizona. At the time of the transactions, the owner and operator of Gene's Modern Market was defendant Arnold Ong. The checks, bearing the further stamped endorsement "Deposit to the account of Gene's Modern Market," were deposited by Ong to the account of Gene's Modern Market at the Thunderbird Bank.

The checks were credited to that account and were submitted by Thunderbird for collection through normal banking channels. All of the checks were paid in due course.

Coffelt, who appropriated the proceeds of the checks to his own use, in fact had no authority to endorse checks on behalf of Bruning. Thunderbird, during the time it paid the checks, made no effort to determine through Bruning whether Coffelt had such authority.

At the time the checks were negotiated, there was in effect between Bruning and Liberty a surety contract under the terms of which Liberty insured Bruning against any pecuniary loss due to the fraud, dishonesty, forgery, theft or embezzlement of Bruning's employees. Upon discovering the loss in this case, Bruning recovered from Liberty the sum of $175,197.13, and assigned to Liberty all of its rights against the various defendants, including Thunderbird. The contract also provided that Liberty became subrogated to the rights of Bruning upon payment of its claim.

Liberty thereupon filed a complaint for the amount paid under the contract naming as defendants Coffelt, Ong and Thunderbird, and, except as to Coffelt, relied solely upon the assignment from Bruning as the basis of its right to recovery. Additional pleadings, in the form of cross-claims by Thunderbird against Ong and by Ong against Coffelt, and third party complaints by Thunderbird and Ong against Bruning were subsequently filed.

On 22 March 1973, Liberty filed a motion for summary judgment against Thunderbird only. Thunderbird filed a response as well as a motion for summary judgment in its favor. The trial court, after a hearing, granted Thunderbird's motion and entered judgment in favor of Thunderbird and against Liberty. Liberty moved for rehearing which motion was denied and Liberty then appealed.

## LIBERTY'S RIGHTS AS ASSIGNEE

The transactions out of which Bruning's (and Liberty's) claims arose occurred prior to the adoption in Arizona of the Uniform Commercial Code. Consequently, A.R.S. § 44–423 (1956), § 23 of the Uniform Negotiable Instruments Act, is applicable and there is no question under the law as it then existed that Thunderbird was liable to Bruning. The liability of the collecting bank in such a situation was almost universally recognized prior to the adoption of the Uniform Commercial Code, cf. *Merchants & Manufacturers Association v. First National Bank of Mesa*, 40 Ariz. 531, 14 P.2d 717 (1932).

■ Liberty sued Thunderbird based solely on the assignment of Bruning's claim after Liberty had paid to Bruning the amount of the loss. Thunderbird argues that Liberty has no rights over and above those which it has under the doctrine of subrogation. This is important to Thunderbird because if the matter is to be considered under the equitable doctrine of subrogation, there are certain equitable defenses such as the "compensated surety defense" which would not be available to Thunderbird if the suit is one in law on the contract which has been assigned to Liberty by Bruning.

■ Under appropriate circumstances, the right of a party to be subrogated to the claim of another will arise independent of any contract. *D. W. Jaquays & Co. v. First Security Bank,* 101 Ariz. 301, 419 P.2d 85 (1966). We have said:

"* * * Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. It is a creature of equity, and was adopted from the Roman and not from the common law. Its purpose is the prevention of injustice and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it. It rests upon the principle that substantial justice should be attained, regardless of form. * * * The general rule of equity which is probably most often invoked in cases of subrogation is

that he who seeks equity must do equity, and subrogation can only be granted when an equitable result will be reached. * * *" *Mosher v. Conway,* 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935).

A number of courts have gone further than our court and have held that a party seeking to assert a claim as an assignee must demonstrate that it would have been entitled to recover in the absence of an assignment as a subrogee. In the case most heavily relied upon by Thunderbird, the California Supreme Court stated the rule as follows:

"* * * [A]t the outset, it should be noted that assignment of an assignable cause of action is but one of the recognized forms of subrogation, and that when entitled to substitution in the place of one entitled to institute and to maintain an action, neither a written nor an oral contract is necessary to effect a transfer of such right; consequently, with reference thereto repeatedly it has been ruled not only that a formal, written assignment of a claim of the nature of that here involved adds nothing to the enforceability by the assignee of the cause of action, but also that it is subject to the same defenses as though no assignment thereof of any sort had been made. * * *

\* \* \* \* \* \*

"* * * [O]ne who asserts a right of subrogation, whether by virtue of an assignment or otherwise, must first show a *right in equity* to be entitled to such subrogation, or substitution, and that where such right is clearly shown by the application of equitable principles, an assignment adds nothing to his right thereto. Otherwise stated, where by the application of equitable principles, a surety has been found not to be entitled to subrogation an assignment will not confer upon him the right to be so substituted in an action at law upon the assignment. His rights must be measured by the application of equitable principles in the first instance, his recovery being depend-

able upon a right in equity, and not by virtue of an asserted legal right under an assignment. * * *" *Meyers v. Bank of America Nat. Trust & Savings Ass'n,* 11 Cal.2d 92, 94–97, 77 P.2d 1084, 1085–1086 (1938).

To the same effect see *Louisville Trust Co. v. Royal Indemnity Co.,* 230 Ky. 482, 20 S.W.2d 71 (1929); *Bank of Fort Mill v. Lawyers Title Ins. Corp.,* 268 F.2d 313 (4th Cir. 1959); *Castleman Construction Company v. Pennington,* 222 Tenn. 82, 432 S.W.2d 669 (1968).

■ In the instant case, if we followed Meyers, supra, Liberty's right under the assignment would be dependent upon its right as a subrogee and not as an assignee. We believe, however, that Liberty is entitled to recovery under the assignment regardless of its rights as a subrogee.

■ Bruning initially had a valid cause of action against Thunderbird. As a general rule, any claim that would survive the death of the plaintiff may be assigned. *Employers Casualty Co. v. Moore,* 60 Ariz. 544, 142 P.2d 414 (1943) (personal injury actions do not survive and thus are not assignable). And the existence of an equitable right of subrogation is logically irrelevant to the question of whether a party may transfer, by assignment, an otherwise assignable claim.

We thus agree with Judge Jacobson who said in dissent:

"The problem I have in applying the rule enunciated in *Meyers, supra,* is the assertion that the surety's rights to an assignment of its principal's claim must be founded in equity. As previously stated, this was historically true, but does that mean that merely because of principle of law had its origin in equity, the parties as between themselves, cannot contractually make those principles legally binding? Or put more directly, does the fact that the legal theory has origin in equity, require an application of equitable defenses, even though a compatible theory existed at law, without these de-

fenses? I see no logical reason for making such a requirement, especially when the law recognizes the assignability of the claim here involved. *Deatsch v. Fairfield, supra,* 27 Ariz. 387, 233 P. 887 (1925). Moreover, it appears somewhat incongruous that principles of equity and fairness which admittedly give rise to a right of subrogation to prohibit an injustice are now invoked to prohibit enforcement of that right. No one seriously argues that the payee's cause of action against the bank is not assignable, nor that a third party assignee could not maintain the action at law. What then happens to the maximum of equity that 'equity follows the law and does not supersede it?' " 25 Ariz.App. at 212, 542 P.2d at 50–51.

■ In allowing the claim to be assigned, it necessarily follows that Liberty's rights are measured by the law of contract and not by the equitable doctrine of subrogation. We agree with the Georgia Court of Appeals in a case wherein an employee stole a number of checks drawn by his employer, forged the names of the various payees, and deposited the checks to his account. The plaintiff insurance company paid the value of the checks to the employer under a fidelity bond, receiving in return an assignment of the employer's claim against the drawee bank. On the issue of the insurance company's rights, the court there said:

" * * * The right of action was assignable. (citations omitted) There seems to be a well-recognized distinction between the right to sue on a claim of legal subrogation, which is of an equitable nature, and the right to sue on conventional subrogation, based on an agreement of the parties. (citations omitted)

"While there are many cases dealing with the doctrine of subrogation, and some confusion and conflict in the decisions of the various state and federal courts, in this State an action based on conventional subrogation of the type presented by this case, clearly established by an agreement reduced to writing or otherwise shown, in which no equitable relief in aid of the claim is prayed, is an action at law, and is not controlled by the principles appertaining to an action in equity, and the conventional subrogees in this action did not have the burden of showing the superior equity as against the defendant in order to recover. * * * " *First Nat. Bank of Atlanta v. American Surety Co.,* 71 Ga.App. 112, 119, 30 S.E.2d 402, 407 (1944). See also *Grubnau v. Centennial Nat. Bank,* 279 Pa. 501, 124 A. 142 (1924).

Similarly, in a case involving a suit by the insuror of the payee of certain checks against a bank which cashed the checks over endorsements forged by an employee of the payee, the Iowa court held that the insurance company has a cause of action as an assignee:

"We hold, therefore, that the annuity company had something to assign. It did assign, and consequently, the plaintiff surety company had a cause of action against the defendant Bankers' Trust Company, * * * " *National Surety Co. v. Bankers Trust Co.,* 210 Iowa 323, 330, 228 N.W. 635, 637 (1930). See also *Aetna Casualty & Surety Co. v. Lindell Trust Co.,* 348 S.W.2d 558 (Mo. App. 1961).

■ Having decided that the claim could be assigned and that Liberty may sue in law on the contract, it follows that Thunderbird does not have available the equitable "compensated surety defense."

We recognize that the rule imposing liability for the face amount of a check paid over a forged endorsement upon an intermediate collecting bank is harsh, and we are reluctant to extend such liability. However, at the same time, we see no reason why Thunderbird should be relieved of its unquestioned liability merely because the principal plaintiff, Bruning, took the precaution of insuring itself against the risk of loss. Put another way, but for the contract between Bruning and Liberty,

Thunderbird would clearly have been liable for the amount of the checks to Bruning; it therefore suffers no prejudice when that liability is shifted from Bruning to Liberty under the terms of the contract between those two parties.

Liberty may therefore sue as an assignee of Bruning's claim against Thunderbird, and is not required to demonstrate superior equities before it can recover.

### ELECTION OF REMEDIES

Thunderbird argues in the alternative that Liberty is precluded from relief under the doctrine of election of remedies. The theory here is that Bruning initially had a cause of action against either the collecting bank, Thunderbird, or against the dishonest employee, Coffelt, but not both. Thus, Thunderbird contends Bruning's decision to seek compensation under the fidelity bond constituted an election to claim against or "sue" the employee and Liberty is bound by that election. We disagree.

The payee, Bruning, has elected neither to pursue its dishonest employee or the collecting bank, but rather has invoked its rights under the contract between it and Liberty. We do not feel that collecting under a fidelity bond has any significance in terms of the liability of potential defendants to the plaintiff, except insofar as their liability is shifted to the insurance company as the result of an assignment of the underlying claim.

Therefore, even assuming that the doctrine of election of remedies would be applicable as to Bruning, we conclude that Bruning in fact made no such election, and Liberty is consequently free to pursue any party which would have been liable to Bruning. *Aetna Casualty & Surety Co.,* supra.

Opinion of the Court of Appeals vacated. Judgment of the trial court reversed and remanded for further proceedings consistent with this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.