**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**
Petitioner,

v.

**The RIGGS NATIONAL BANK OF WASHINGTON, D.C.,**
Respondent.

**No. 93–SP–1278.**

District of Columbia Court of Appeals.

Argued May 24, 1994.
Decided Aug. 18, 1994.

Edward G. Gallagher, Washington, DC, for petitioner.

Eva Petko Esber, with whom Nancy F. Preiss and Karen L. Peck, Washington, DC, were on the brief, for respondent.

Before STEADMAN, SCHWELB and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Before the court is a certified matter from the United States Court of Appeals for the District of Columbia Circuit relating to the applicability of the so-called "superior equities doctrine" in an action against a drawee bank by an insurance company as a conventional subrogee and assignee of its insured, a depositor in the bank. *National Union Fire Ins. Co. v. Riggs Nat'l Bank*, 303 U.S.App. D.C. 302, 5 F.3d 554 (1993). We conclude, given the facts described below, that under District of Columbia law, the superior equities doctrine does not apply to this action.

## I.

The facts relevant to the questions certified are as follows.[1] Between April 20, 1990, and May 14, 1990, unknown individuals cashed 14 fraudulent checks,[2] totalling $640,-712.38, drawn on the account of NHP Property Management, Inc. ("NHP") at the defendant Riggs National Bank ("Riggs"). On June 22, 1990, NHP requested that Riggs recredit its account for the loss. After Riggs formally denied the request on November 15, 1990, NHP submitted its proof of loss to National Union Fire Insurance Company ("National Union") and was paid $597,980 ($640,712.38 less $32,732.38 recovered from a third-party bank and a $10,000 deductible).

Section 14 of NHP's policy with National Union provides in relevant part:

> In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

Pursuant to this provision, NHP assigned National Union all its rights against Riggs and agreed to be bound by the result of the suit.

National Union filed this suit against Riggs as an assignee and, by virtue of Section 14 of the policy, as a conventional subrogee of NHP. After a bench trial, the district court found that Riggs had complied with reasonable commercial standards in processing the checks and therefore was not negligent. The district court further held that, despite the clear presumption in the Uniform Commercial Code ("UCC") favoring the de-

---

1. The facts are those set forth by the United States Court of Appeals for the District of Columbia in its certification of this case. *National Union, supra*, 303 U.S.App.D.C. at 303–04, 5 F.3d at 555–56.

2. The trial court's ruling indicates that the forgeries were of the drawer's signature.

positor against the bank,[3] District of Columbia law requires a balancing of the equities when the depositor's *insurer* brings suit to recover from a bank, either by way of assignment or subrogation. Therefore, under the superior equities doctrine, as between two innocent parties—National Union and Riggs—the equities balanced in favor of Riggs. National Union appealed, asserting that the superior equities doctrine does not apply when the insurer sues as an assignee and conventional subrogee, as opposed to an equitable subrogee.

Pursuant to D.C.Code § 11–723 (1989), the United States Court of Appeals for the District of Columbia Circuit certified the following questions to us:

I. Under District of Columbia law, and given the facts described, does the superior equities doctrine apply to an action by an insurer as an assignee and conventional subrogee of its insured?

II. Under District of Columbia law, and given the facts described, does the adoption of the Uniform Commercial Code abrogate or modify the superior equities doctrine?

## II.

### A.

■ Subrogation—the substitution of one person in the place of another with reference to a lawful claim, demand, or right so that the substituted party succeeds to the rights of the other, BLACK'S LAW DICTIONARY 1427 (6th ed. 1990)—developed as a device of equity "established as a matter of necessity for the purpose of administering essential justice." 11 JOHN ALAN APPLEMAN AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE

§ 6502 (1981); *see* John D. O'Malley, *Subrogation Against Banks on Forged Checks,* 51 CORNELL L.Q. 441, 444 (1966). Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it, to prevent unjust enrichment.[4] APPLEMAN, *supra,* § 6502; *see Washington Mechanics' Savings Bank v. District Title Ins. Co.,* 62 App.D.C. 194, 196, 65 F.2d 827, 829 (1933). The rights of the party who paid the debt in no way depend upon showing a contract provision or formal assignment; evidence of payment is sufficient. *London Guarantee and Accident Co. v. Enterprising Servs. Inc.,* 192 A.2d 292, 293 (D.C.1963).

Where, therefore, the right of the party seeking subrogation stems solely from this equitable principle, it is understandable that the thought arose that the doctrine may be invoked only where the equities of the party seeking to benefit are "greater than those of its adversary." *Schrier v. Home Indemnity Co.,* 273 A.2d 248, 251 (D.C.1971); *Washington Mechanics', supra,* 62 App.D.C. at 196, 65 F.2d at 829. Otherwise, equity perceives no reason to vary the status quo. This so-called "superior equities doctrine" may be seen in its manifestation as the "compensated surety defense," which is invoked to bar a compensated surety from recovering from a third party who would be liable in a suit directly by the insured, unless the surety can show equities superior to the third party. We have applied this principle in several cases in this jurisdiction, most notably *Washington Mechanics', Schrier,* and *American Sec. Bank v. American Motorists Ins. Co.,* 538 A.2d 736 (D.C.1988).

■ However, the case now before us is different. Here, the claim of the surety does

---

3. Although the trial court does not appear to have squarely so stated, we must assume for present purposes that absent the superior equities doctrine, judgment would have been entered in favor of the insured. This would reflect the long-extant rule, stemming from the famous English case, *Price v. Neal,* 3 Burr. 1354 (1762), and carried forward in the UCC, that even a nonnegligent drawee is liable for payment on the forged signature of its depositor, at least absent negligence by the depositor. *See* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 17–2, at 826 (3d ed. 1988).

4. One case noted "[i]t is difficult to understand why" subrogation was originally more commonly allowed for tort claims than for contract claims although "assignment of tort claims was frowned upon at law while the assignment of choses in action and of many kinds of contracts was encouraged." *Standard Accident Ins. Co. v. Pellecchia,* 15 N.J. 162, 104 A.2d 288, 296 (1954). It may be that resistance to the assignment of tort claims made the need for an equitable remedy in such cases all the greater.

not depend upon invoking an equitable principle of unjust enrichment. Rather, it flows from the express agreement of the insured that the surety shall be subrogated, here accompanied by an assignment to the surety of the insured's cause of action against the bank. This "conventional subrogation" arises from an express or implied agreement between the payor and the debtor or creditor, in contrast to "equitable subrogation," which arises from the mere fact of payment by a third party. APPLEMAN, *supra*, § 6501.

In a case involving facts quite similar to those here, we recently took note of the potential difference between these two quite distinct doctrinal bases for invocation of the right to recover from a third party. In *American Sec. Bank, supra,* an insured depositor discovered twenty-four forged checks and notified the bank. 538 A.2d at 737. After the bank refused to recredit the depositor's account for the amount it had paid on the forged checks, the depositor was reimbursed by the insurer for the full amount. The insurer then sued the bank for that amount. The bank challenged the insurer's right to do so. We noted:

> Because the insurer did not produce the necessary declarations page of its insurance policy with ASPEN [the insured], the trial court deemed the policy inadmissible. The insurer thus failed to prove conventional subrogation. *See* 16 COUCH ON INSURANCE 2D §§ 61:2, 61:3 (Rev. ed. 1983) (distinguishing conventional subrogation arising out of contract from subrogation by operation of law). Nevertheless, under equitable principles, the insurer's payment to ASPEN for its insurance claim conferred upon it "instanter" the right to sue in ASPEN's stead.

*Id.* at 737 n. 1.[5] Since equitable subrogation was thus involved, we then went on to deal with the bank's argument, based on the superior equities doctrine, without suggesting, however, that the doctrine would necessarily also have applied had the insurer proven conventional subrogation. That is the issue we must decide on this certified matter.

### B.

■■■ As *American Sec. Bank* indicates and as the United States Court of Appeals observed in its order of certification, we agree that prior case law has not definitively resolved the issue here. Although admittedly a broader reading is possible, we think the decisions have rested upon a factual postulate of equitable subrogation and its concomitant analysis,[6] and we do not view their inclusion in supporting citations of cases in other jurisdictions involving conventional subrogation as determinative of the issue before us, particularly where conventional subrogation is coupled with an express assignment.[7]

Case law from other jurisdictions presents a mixed picture, with three basic approaches to the issue. First, a few states do not apply the superior equities doctrine to equitable subrogation, conventional subrogation, or assignment. Indeed, commentators have noted that not only has the compensated surety defense "outlived any usefulness that it may once have had," but in the modern world "the 'superior equity' doctrine is arbitrary in giving to an insured the choice of allocation of ultimate loss, and unjust in increasing the burden of the insured because of his foresightedness in insuring," E. Allan Farnsworth, *Insurance Against Check Forgery,* 60

---

**5.** Included in the cited sections of COUCH ON INSURANCE is a recognition of the authority we follow in this opinion. See pages 8–9, *infra.*

**6.** In addition to the above cited cases, appellee relies on *Anacostia Bank v. United States Fidelity & Guaranty Co.,* 73 App.D.C. 388, 119 F.2d 455 (1941), as applying the superior equities doctrine to an assignment. In fact, the subrogee claimed both by way of subrogation and as assignee. Citing cases in which other jurisdictions allowed equitable subrogation against a third party that knew of or benefitted from the act causing loss, the court determined that equitable subrogation

against the bank would be permitted, and thus did not reach the broader issue of assignment. *Id.* at 389, 119 F.2d at 456.

**7.** While the presence of an assignment in our view unquestionably precludes the application of the superior equities doctrine, we fail to see any ready reason why conventional subrogation, also dependent on agreement, should not be likewise treated. We therefore shall treat the two as synonymous for purposes of this opinion. *See First Nat'l Bank v. American Sur. Co.,* 71 Ga.App. 112, 30 S.E.2d 402, 407 (1944).

COLUM.L.REV. 284, 324 (1960); moreover, in light of the fact that the vast majority of modern banks are insured against forgery, shifting the loss from one surety to another makes little sense, O'Malley, *supra,* at 463. *See also, e.g., Hartford Fire Ins. Co. v. Riefolo Constr. Co.,* 81 N.J. 514, 410 A.2d 658, 662 (1980) (rejecting doctrine of superior equities and allowing subrogation as long as insured and insurer have not engaged in behavior which would make such relief unconscionable); *South Carolina Nat'l Bank v. Lake City State Bank,* 251 S.C. 500, 164 S.E.2d 103, 106 (1968) ("serious challenges have been levied against the usefulness and practicality of the compensated surety defense under modern banking practices").

Some jurisdictions have chosen a second approach and adopted the superior equities doctrine in all cases of equitable or conventional subrogation or assignment. The leading case in this line, *Meyers v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 11 Cal.2d 92, 77 P.2d 1084, 1085–86 (1938) (per curiam), reasons that assignment is just another type of subrogation and hence all rights therefrom depend upon equitable principles rather than an asserted legal right under an assignment. *See, e.g., Castleman Constr. Co. v. Pennington,* 222 Tenn. 82, 432 S.W.2d 669, 676 (1968) (conventional subrogation is essentially an equitable claim). A second theory for applying the superior equities doctrine to assignment and conventional subrogation is that payment by an insurer to its insured destroys any claim its insured would have had against the bank, leaving no claim for the insured to assign. *Bank of Fort Mill v. Lawyers Title Ins. Corp.,* 268 F.2d 313, 316 (4th Cir.1959). The only remaining possibility for recovery by the insurer then becomes subrogation, which presumes a destruction of the claim. *Id.; see, e.g., American Sur. Co. v. Bank of California,* 133 F.2d 160, 164 (9th Cir.1943) (claim destroyed by payment, so no assignment possible).

We think such reasoning takes insufficient regard of the significant doctrinal difference between subrogation by operation of law and that dependent upon agreement. We particularly note that a number of jurisdictions have recognized the importance of agreement of the parties that underlies conventional subrogation and assignment. O'Malley, *supra,* at 458; *cf. Spirek v. State Farm Mut. Auto. Ins. Co.,* 65 Ill.App.3d 440, 21 Ill.Dec. 817, 823, 382 N.E.2d 111, 117 (1978) ("common law concepts of subrogation cannot be employed to create rights of subrogation where the insurance policy provides otherwise"); *Commissioner of Ins. v. Conveyancers Title Ins. & Mortgage Co.,* 300 Mass. 457, 15 N.E.2d 820, 826 (1938) (applying the terms of the "legal instruments by which the parties have seen fit to bind themselves" rather than general principles of subrogation). As a leading authority has recognized:

> In some jurisdictions the subrogation claimant is in a better position when he claims by way of conventional rather than legal subrogation. For example, there is authority that an action based upon conventional subrogation clearly established by an agreement reduced to writing or otherwise shown, in which no equitable relief is prayed, is a legal action, not controlled by principles of equity, and that a conventional subrogee does not have the burden of showing the superior equity in himself as plaintiff to authorize a recovery.

COUCH ON INSURANCE, *supra,* § 61.3. Where "it is unquestioned that the right possessed by the insured against the bank [on forged checks] is legally assignable to anyone...., it is difficult to comprehend why a distinction is made in some jurisdictions to the effect that a paid surety must take the assignment subject to a defense which could not be interposed against any other assignee." *Id.* at 459.

Thus, a third approach is found in states which analyze equitable subrogation and conventional subrogation or assignment separately and do not apply the superior equities doctrine to the latter two cases. *See, e.g., American Sur. Co. v. Baker,* 172 F.2d 689, 692 (4th Cir.1949) (applying North Carolina law; where the chose of action was assignable, the plaintiff had full legal title under the assignment, so court had "no occasion to invoke the doctrine of subrogation," thus not discussing law for equitable subrogation); *First Nat'l Bank, supra,* 30 S.E.2d at 406–07 (conventional subrogation and assignment

are actions at law, not in equity, so no superior equities required to recover, but suggesting equity would require such a balancing); *National Sur. Co. v. Bankers' Trust Co.*, 228 N.W. 635, 637 (Iowa 1930) (allowed a surety company which had paid its insured and received an assignment, to sue the bank that had paid on the forged drafts although the surety conceded that it would not have been able to prevail under a subrogation claim); *Aetna Casualty & Sur. Co. v. Lindell Trust Co.*, 348 S.W.2d 558, 570–71 (Mo.Ct.App. 1961) (no showing of superior equities was required on a claim of conventional subrogation because it stands on a contract not equity); *Grubnau v. Centennial Nat'l Bank*, 279 Pa. 501, 124 A. 142, 144 (1924) (subrogation was not at issue where insurer had assignment, so superior equities were not involved); *see generally* Gregory R. Veal, *Subrogation: The Duties and Obligations of the Insured and Rights of the Insurer Revisited*, 28 TORT & INS. L.J. 69, 75–76 (Fall 1992) (discussing states which distinguish equitable subrogation from conventional subrogation and assignment).

A leading well-reasoned case is *Liberty Mutual Ins. Co. v. Thunderbird Bank*, 113 Ariz. 375, 555 P.2d 333, 334–35 (1976) (en banc). Where an unauthorized employee endorsed company checks for his own use, the insurer paid the depositor company and was contractually subrogated to the depositor's rights against the bank that had paid on the checks. *Id.* The Supreme Court of Arizona analyzed various decisions which prevented an assignee from recovering unless it was also entitled to recovery in equity as a subrogee as well, and compared them to rulings which allowed assignees or conventional subrogees to recover without a balancing of equities. *Id.* 555 P.2d at 336–37. The court chose to follow the latter line of cases, holding that the compensated surety defense applies only to equitable subrogees and not to assignees. *Id.* 555 P.2d at 337. The court saw

no reason why Thunderbird [the bank] should be relieved of its unquestioned liability merely because the principal plaintiff, Bruning [the depositor], took the precaution of insuring itself against the risk of loss. Put another way, but for the contract between Bruning and Liberty [the insurer], Thunderbird would clearly have been liable for the amount of the checks to Bruning: it therefore suffers no prejudice when that liability is shifted from Bruning to Liberty under the terms of the contract between those two parties.

*Id.* 555 P.2d at 337–38. Because the insurer's rights were "measured by the law of contract and not by the equitable doctrine of subrogation," it could sue as an assignee without first showing superior equities. *Id.*

■ We agree with the Arizona Supreme Court and are persuaded to follow the line of cases holding that the superior equities doctrine, although applicable to equitable subrogation claims,[8] has no application in cases of conventional subrogation and assignment. Conventional subrogation and assignment are based on contractual agreements between parties and do not derive their validity from principles of equity. Where the bank would be liable to the depositor and the depositor agrees to assign or contract its rights to its insurer, we see no sound reason for allowing the bank to prevail against the insurer. Enforcing the agreement does not saddle the bank with any new or unexpected liability. Further, it will carry out the intent of the insurance contract, under which the insurer has effectively agreed to assume ultimate liability only where the law otherwise would place that liability upon the insured. Because the assignee stands in the same position as the assignor, the bank's liability with or without the assignment will depend upon its duty to the depositor. District of Columbia law evinces a policy of free assignability of claims. *See* D.C.Code §§ 28–2303, –2304 (1991); *Flack v. Laster*, 417 A.2d 393, 399 (D.C.1980).[9] Under this principle,

---

**8.** We as a panel are of course bound by the prior decisions cited above applying the superior equities doctrine to such claims. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

**9.** While no code section or reported case deals expressly with the assignability of tort claims, D.C.Code § 28–2304 allows the assignee to sue in his own name on the choses in action included in a general assignment. In addition, it is indisputable that "the whole development of modern

the insurer as successor to the depositor's rights should not be subject to the superior equities doctrine which the bank could not have raised to defeat a suit by the depositor. Relevant here, the UCC has spelled out in detail and resolved conflicting views as to the circumstances under which a depository bank should be held liable to its depositor in cases of forgeries. See note 3 *supra*. The relative certainty thus provided should not be discarded for an amorphous balancing of equities where, by express agreement, an insurer stands squarely in the depositor's shoes.

For the above reasons, we answer the first certified question in the negative.[10] The Clerk is hereby directed to transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to the parties.

*So ordered.*

law has been in the direction of the freer assignability of choses in action." *Baker, supra,* 172 F.2d at 691. That case went on to explain:

All things in action which survive and pass to the personal representatives of a decedent creditor as assets, or continue as liabilities against the representatives of a decedent debtor, are in general thus assignable. All which do not thus survive, but which die with the person of the creditor or of the debtor, are not assignable. The first of these classes, according to the doctrine prevailing throughout the United States, includes all claims arising from contract express or implied, with certain well-defined exceptions; and those arising from torts to real or personal property, and from frauds, deceits, and other wrongs whereby an estate, real or personal, is injured, diminished, or damaged. *Id.* at 691–92 (quoting 4 JOHN N. POMEROY, EQUITY JURISPRUDENCE § 1275 (5th ed. 1941)). Hence, the general rule allows assignment of most tort claims. In any event, appellee does not dispute the validity of the assignment here.

10. Since we answer the first question in the negative, the second question no longer appears to be "determinative of the cause pending in such certifying court" as required by D.C.Code § 11–723(a) and we therefore do not reach it.