**ANTAL'S RESTAURANT, INC., Appellant,**

v.

**LUMBERMEN'S MUTUAL CASUALTY CO., Appellee.**

No. 95–CV–1333.

District of Columbia Court of Appeals.

Submitted June 28, 1996.

Decided Aug. 15, 1996.

---

J. Joseph Barse was on the brief for appellant.

Sanford A. Friedman was on the brief for appellee.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

In this case, we apply (for the first time in this jurisdiction) the settled principle that an express anti-assignment clause of an insurance contract does not bar assignment of an insured's claim (or "chose in action") against the insurer after a loss has occurred. Since the trial court's grant of summary judgment rested on a contrary determination, we reverse.

## I.

For present purposes, the facts are undisputed. Appellants operated a restaurant known as Charing Cross on the premises of 3027 M Street, N.W., under a lease with the owners of the property. The property was damaged by a fire on November 21, 1990. The property owners had purchased a fire insurance policy from appellee (Lumbermen's) that was in effect on the date of the fire. They filed a claim with Lumbermen's for loss in the amount of $48,249.82, but Lumbermen's agreed to pay only $35,202.16, leaving an amount of $13,047.66 in dispute. The owners then assigned their claim to appellants, who filed suit against Lumbermen's for that amount. Lumbermen's defended in part on the basis of an anti-assignment clause of the policy, which stated:

> F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY
>
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

Lumbermen's had not consented to the assignment in writing. The trial judge accordingly granted summary judgment to the insurer on the ground that the "insurance policy provision clearly and unequivocally precludes assignment without consent of the insurer."

## II.

■ "District of Columbia law evinces a policy of free assignability of claims." *National Union Fire Ins. Co. v. Riggs Nat'l Bank,* 646 A.2d 966, 971 (D.C.1994) (citing D.C.Code §§ 28–2303, –2304 (1991)). As we stated in *Flack v. Laster,* 417 A.2d 393 (D.C. 1980):

> In general, all contractual rights may be assigned, including the right to sue for enforcement of a claim. The right to assign is presumed, based upon principles of unhampered transferability of property rights and of business convenience. The effectiveness of an assignment does not normally depend upon the consent of the obligor unless the rights to be assigned involve the performance of unique personal services.

*Id.* at 399 (citing, *inter alia,* D.C.Code §§ 28–2302 to –2304) (footnotes omitted). Of course, courts generally "will honor an anti-assignment clause in contracts when it contains clear, unambiguous language...." *Id.* See also *Fox–Greenwald Sheet Metal Co., v. Markowitz Bros.,* 147 U.S.App. D.C. 14, 19, 452 F.2d 1346, 1351 (1971) (relied on by the trial court). Also, policies for fire insurance are normally considered "personal" in nature, because the identity of the insured is essential to the insurer's willingness to contract on the terms specified. *See* 16 GEORGE J. COUCH, CYCLOPEDIA OF INSURANCE LAW § 63:14, at 744 (2d ed.1983); *see, e.g., Ocean Accident & Guar. Corp. v. Southwestern Bell Tel. Co.,* 100 F.2d 441, 446 (8th Cir.), *cert. denied,* 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1056 (1939) (insurer "might be willing to write a risk for one person of known habits and character and not for another person of less integrity and prudence"). So contracts of this sort are generally not assignable without the consent of the parties. *Id.* at 444; 16 COUCH § 63:14, at 744.

■ The present case, however, is controlled by another principle, one reflecting the general aversion of the law to limitations on the free assignability of claims. The great weight of authority distinguishes between assignment of an insurance policy before a loss occurs and assignment after loss.

> A provision in a policy providing that the policy shall be void if assigned without the company's consent applies to assignment before loss. Such a clause restricting assignment does not in any way limit the right of assignment after the loss has occurred, and the rights of the parties become fixed thereby.

5A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW & PRACTICE § 3458, at 408 (1970); *accord,* 16 COUCH § 63:40, at 763–65; ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW § 4.1, at 299 (1988); 43 AM.JUR.2D *Insurance* §§ 791–92, at 854–55 (2d ed.1982). The distinction applies equally to fire insurance. 5A APPLEMAN § 3459, at 411. The reason for the distinction is that, whereas before loss the insurer might be unwilling to underwrite a risk for a person of questionable "integrity and prudence," after loss "the delectus personae [is] no longer ... material" since "the insurer becomes absolutely a debtor to the assured for the amount of the actual loss...." *Ocean Accident & Guar. Corp.,* 100 F.2d at 445–46. The assignment at that point is "of a chose in action—the right to compel [the insurer's] payment of insurance proceeds in accord with that interest ... recognized in the policy and defined in the contract." *Kintzel v. Wheatland Mut. Ins. Ass'n,* 203 N.W.2d 799, 804–05 (Iowa 1973). *See* APPLEMAN § 3458, at 406–07 (after fire loss, insured could assign interest in policy proceeds because "policy ... became a mere chose in action, which could be assigned just like any other chose in action").[1]

■ Lumbermen's argues that the specific language of the anti-assignment clause

---

1. For a sampling of decisions to the same effect, see *Alabama Farm Bureau Ins. Co. v. McCurry,* 336 So.2d 1109, 1112–13 (Ala.1976); *Utica Mut. Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 468 A.2d 315, 317 (Me.1983); *Gimbels Midwest, Inc. v. Northwestern Nat'l Ins. Co.,* 72 Wis.2d 84, 240 N.W.2d 140, 145 (1976); *Greco v. Oregon Mut. Fire Ins. Co.,* 191 Cal.App.2d 674, 12 Cal.Rptr. 802, 806–07 (1961); *Pacific Ins. Co. of New York v. R.L. Kimsey Cotton Co.,* 114 Ga.App. 411, 151 S.E.2d 541, 545 (1966); *Young v. Chicago Fed. Sav. & Loan Assoc.,* 180 Ill.App.3d 280, 129 Ill.Dec. 212, 216, 535 N.E.2d 977, 981 (1989); *Krauss v. Central Ins. Co. of Baltimore,* 40 N.Y.S.2d 736, 741 (N.Y.Sup.Ct.1943).

in this case removes it from the scope of the general rule because, rather than merely barring assignment "of the policy," [2] it prohibited unconsented assignment of "[y]our rights" under the policy. That phrase, in Lumbermen's view, can only mean the right to be compensated for losses. But the case law and commentary rejects this distinction founded on particular language of the clause. "[A]fter the event has occurred by which liability ... is fastened upon the insurer, the policy *or rights thereunder* may be assigned with or without the consent of the insurer...." 43 AM.JUR.2D *Insurance* § 791, at 853–54 (emphasis added). "An assignment of a fire-insurance policy [or the proceeds] subsequent to the loss is valid regardless of the conditions of the policy." *Smith v. Buege,* 182 W.Va. 204, 387 S.E.2d 109, 116 (1989) (citation and internal quotation marks omitted). *See also Santiago v. Safeway Ins. Co.,* 196 Ga.App. 480, 396 S.E.2d 506, 507–08 (1990) (nonassignment clause barring assignment of "rights and duties under this policy" could not invalidate post-loss assignment of right to insurance proceeds); *National Life & Accident Ins. Co. v. Magers,* 319 S.W.2d 53, 54 (Kan.Ct.App.1958) (policy barring "assignment or pledge of this policy or of any benefits thereunder" did not bar assignment after loss). Before loss, the insured has only an inchoate or a contingent right to compensation, but after loss that right has "bec[o]me absolute" and transferable without consent, since the relationship of insured and insurer is now one of "creditor and debtor" and the policy no longer "significant except as evidence of the existence and amount of the

debt." *Alkan v. New Hampshire Ins. Co.,* 53 Wis. 136, 10 N.W. 91, 95 (1881). Indeed, a provision ... prohibiting an assignment after loss has occurred is generally regarded as void, in that it is against public policy to restrict the relation of debtor and creditor by restricting or rendering subject to the control of the insurer an absolute right in the nature of a chose in action.

16 COUCH § 63:41, at 766; *accord,* 43 AM. JUR.2D *Insurance* § 792, at 854 ("[A] specific provision against an assignment after loss is null and void as inconsistent with the covenant of indemnity and contrary to public policy").[3]

■ As reflected in our earlier citations,[4] Title 28, Ch. 23 of the D.C.Code ("Assignment of Choses in Action") embodies this policy of free assignability of claims. Lumbermen's asserts, however, that the statute applicable here covers only "demand[s] of a liquidated character," D.C.Code § 28–2303 (1996),[5] and that Lumbermen's disputes the amount, if any, that it still owes under the insurance policy. But that restrictive reading of the statute is not justified: § 28–2303 lists a variety of assignable choses in action, including "an open account, [a] debt, *and* [a] demand of a liquidated character" (emphasis added). The statute, which originated in 1901,[6] was enacted against a background of decisions holding that the "debt" for which an insurer becomes liable is fixed at the time of loss even though the amount of compensation is still to be ascertained. *See, e.g., Boston & A.R. Co. v. Mercantile Trust & Deposit Co.,* 82 Md. 535, 34 A. 778, 783 (1896) ("The happening of the event [resulting in loss or

2. Lumbermen's thus seeks comfort in the statement that post-loss assignments are allowed "for the obvious reason that the [anti-assignment] clause by its own terms ordinarily prohibits merely the assignment of the policy...." 16 COUCH § 63:40, at 763–65.

3. Inapposite here is the class of cases concerning health insurance benefits, where courts have ruled that the public's interest in controlling medical costs may "override the desirability of free alienation of choses in action." *Augusta Med. Complex, Inc. v. Blue Cross of Kansas, Inc.,* 230 Kan. 361, 634 P.2d 1123, 1125 (1981); *accord, e.g., Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.,* 874 P.2d 1049 (Colo.1994); *Kent Gen. Hosp. v. Blue Cross & Blue Shield of Delaware, Inc.,* 442 A.2d 1368 (Del.1982).

4. *National Union Fire Ins. Co. v. Riggs Nat'l Bank, supra; Flack v. Laster, supra.*

5. Section 28–2303 provides in relevant part:

 An owner of a nonnegotiable written agreement for the payment of money, including a nonnegotiable bill of exchange and a promissory note, or for the delivery of personal property, an open account, debt, and *demand of a liquidated character,* ... may assign it in writing, and the assignee may maintain an action thereon in his own name. [Emphasis added.]

6. Act of March 3, 1901, ch. 854, § 433, 31 Stat. 1256.

injury] ... established the period when the ... obligation of the insurer became complete and ceased to be contingent.... The liability of the insurer was thereby fixed, though the extent of that liability might ... have been unascertained until a subsequent period"). *See also Ross v. American Employers' Liability Ins. Co.,* 56 N.J. Eq. 41, 38 A. 22, 23 (1897); *Ginsburg v. Bull Dog Auto Fire Ins. Ass'n of Chicago,* 328 Ill. 571, 160 N.E. 145, 146 (1928). Section 28–2303 confirms the assignability of appellant's claim.[7]

7. Lumbermen's makes no argument that the assignment here was not in writing, a fact not decisive in any event. *See District of Columbia v.*

The judgment of the Superior Court is reversed and the case remanded for further proceedings.

*So ordered.*

*Hamilton Nat'l Bank,* 76 A.2d 60, 64 (D.C.1950) (construing nearly identical predecessor statute).